A10A1134. ATLANTIC STATION, LLC v. VRATSINAS
CONSTRUCTION COMPANY.
(705 SE2d 191)

BARNES, Presiding Judge.

Atlantic Station, LLC, appeals the trial court's denial of its petition to stay arbitration sought by Vratsinas Construction Company (VCC), which built the parking deck at the mixed use complex, contending that VCC's claim is not subject to arbitration because it is for services that were not included in the parties' written contracts. Because Atlantic Station participated in the dispute resolution process for 18 months before filing its petition to stay the arbitration, we affirm.

We review a grant or denial of a motion to stay arbitration de novo to determine whether the trial court was correct as a matter of law. See *Tigner v. Shearson-Lehman Hutton, Inc.*, 201 Ga. App. 713, 715 (411 SE2d 800) (1991). A review of the voluminous record reveals the following relevant evidence.

The multi-use Atlantic Station complex was built on the 138-acre former "brown field" left by Atlantic Steel. In 1999, VCC began working with Atlantic Station, LLC, to develop proposals for the land.[1] At that time, according to VCC's first arbitration demand, Atlantic Station did not have the personnel or cash flow to undertake the development itself. VCC contends it had an "understanding" with Atlantic Station that it would defer charging for these "preconstruction services" in exchange for the opportunity to serve as the general contractor for any structures that would be built on the property, essentially giving Atlantic Station the "equivalent of an interest free loan."

The complex was eventually planned and financed, and in

---

[1] According to Atlantic Station, its sole member is now AIG Global Real Estate Investment Corp.

February 2001, the parties entered into a contract providing that VCC would build the parking deck and related structures. According to VCC, this contract "merely formalized the relationship of the parties," who continued to operate under the mutual understanding that VCC would be given the opportunity to serve as the contractor for new buildings in exchange for its continued consulting services. In September 2001, VCC contracted with Atlantic District, an affiliated partnership, to build the outer shell of some of the buildings on site, and in January 2003, VCC entered into a second contract with Atlantic Station when the parking lot design underwent major changes. Neither of these contracts refers to VCC supplying its consulting services in exchange for the right to bid on new construction. Both contracts include merger clauses, provide that they may be amended only by written modification, and contain specific provisions regarding the timing of claims. The contracts also define "preconstruction services" and specify the hourly rates to be charged by different personnel for these services. In the February 2001 contract the parties agree that VCC's preconstruction phase began in 1999. The January 2003 contract states that the preconstruction phase began in April 2002.

In May 2006, according to VCC's initial arbitration demand, Atlantic Station did not allow VCC to submit proposals to serve as the contractor for additional buildings, and in June 2006 VCC billed Atlantic Station for $4.5 million in services rendered from 1999 to 2004. (The company notes that it elected not to bill for services from 2004 to May 2005.) Atlantic Station did not respond to the invoices, and on March 28, 2007, VCC submitted its claims to the project architect, following the payment procedures set forth in the contracts. The architect did not respond in 30 days, and in April 2007 VCC submitted a demand for mediation to the American Arbitration Association (AAA) pursuant to the 2001 contract. In mid-August 2007, Atlantic Station sought backup documentation for the invoices and within a week VCC submitted documentation to Atlantic Station, detailing the services for which VCC sought payment. The parties participated in two unsuccessful mediation sessions in August and November 2007.

On December 18, 2007, VCC filed another demand for arbitration with AAA. In January 2008, Atlantic Station filed an answer and a counterclaim for $1 million, but did not object to the arbitration itself. The parties selected the arbitration panel and began conducting discovery. Meanwhile, Atlantic Town Center, a related entity which owns the retail and residential portions of the project, initiated an arbitration demand against VCC in May 2008, for damages allegedly resulting from water leaks in the buildings. Shortly afterward, Atlantic Station filed a motion in that proceeding,

seeking to have VCC's claim against it for services heard at the same time as Atlantic Town Center's water damage claims against VCC, and both arbitrations were stayed while AAA decided whether to consolidate the two demands. The motion to consolidate was denied in January 2009. Atlantic Station participated in the arbitration for six months, during which time it served discovery demands, produced and received documents, filed and opposed motions before the arbitrators, participated in telephone hearings with the Arbitrator Panel, and took depositions.

VCC amended its arbitration demand twice. It describes its first amendment in March 2009 as having "refined and expanded on facts in the original Statement of Claim," but seeking the same amount of damages under the same theories of recovery. The second amendment in June 2009 also sought the same amount of relief. In May 2009, VCC produced 27,000 pages of documents backing up its claim for services performed throughout the project. According to Atlantic Station, depositions taken in June and July 2009 "clarified the basis of VCC's claims" regarding the agreement upon which it relied to recover the costs of its development services. In one of these depositions, a VCC officer testified that when VCC was denied the opportunity to bid on a contract to build a 24-story office tower in 2006, it considered the agreement breached and issued the invoices, which cover development services provided in connection with the entire project site, not just the parking deck.

Atlantic Station then filed a petition to stay the arbitration, contending that "deposition testimony in recent weeks has demonstrated that VCC seeks to recover in arbitration for work outside the scope of the parties' contract and outside the scope of the written arbitration agreement within the contract." According to Atlantic Station, its motion to stay was timely because as a result of "procedural issues" — the motion to consolidate — the parties "did not exchange documents until May 2009" and did not take depositions until late June 2009. Atlantic Station filed the motion to stay within 30 days of the revealing depositions. In its motion to stay, Atlantic Station asserted that the arbitration was barred because the claims were for services outside the scope of the contract. It further contended that VCC failed to make the claims within 21 days of the costs being incurred, as required by the contract, and that the statute of limitation had run on some of the claims.

The trial court held a hearing in November 2009, and denied the motion to stay. In its order the court found that "from the sum and substance of the Agreement between them and the AIA documents that were in place between them and the arguments of counsel that it was the intent specifically of Atlantic Station and VCC to arbitrate."

On appeal, Atlantic Station enumerates five substantive errors: (1) the trial court failed to perform its "gatekeeping" duty and decide whether VCC's claims were included in the arbitration agreement; (2) VCC failed to meet contractual conditions precedent to the claim, such as giving notice within 21 days; (3) VCC waived its claims because they were not made timely; (4) VCC's claims are for "development" services, not "preconstruction services" as defined in the contracts, and thus are not arbitrable because they do not "arise out of or relate to" the written contracts; and (5) the trial court should have stayed the arbitration of VCC's claims for quantum meruit or implied contract. In addition to responding to these specific enumerations of error, VCC contends that Atlantic Station waived its right to object to the arbitration by participating in the process for 18 months before seeking a stay.

Atlantic Station's argument that it had no idea until June 2009 that VCC's claims were based on something other than the written contract is not persuasive, considering de novo the evidence in the record. VCC's initial arbitration demand in December 2007 described the basis for its claims seeking payment for development services. VCC stated that it was retained in 1999 by Atlantic Station to perform preconstruction and other services to develop Atlantic Station Project on the former "brown field" of a long-idled industry site. It began performing these services in 1999, as the parties acknowledged in their 2001 written contract, which according to VCC "merely formalized the relationship of the parties" as well as providing for the construction phase of the parking structure. VCC said in its December 2007 statement of claim that when the parties entered into the contract, they

> had been operating under a mutual understanding or agreement that VCC would be given every opportunity to perform the work for Atlantic Station and its affiliated entities for the construction of all the physical structures within the Project after the plans for construction were developed and that, in return for such future opportunities, . . . VCC would defer from charging Atlantic Station for the performance of the preconstruction and other consulting services related to the Project development. . . . VCC thereafter continued to perform other consulting services for Atlantic Station and its affiliates until May, 2006 pursuant to the same understanding and agreement between VCC and Atlantic Station.

VCC said it "became aware" in May 2006 that Atlantic Station no longer intended to give it the opportunity to undertake additional construction work, which triggered its submission of invoices for the

consulting services it performed from 1999 to 2004. VCC even said in its initial arbitration demand that the parties proceeded with the understanding that VCC would defer billing "despite the contract terms" to the contrary providing that claims were waived unless presented within the specified time provided. Finally, VCC argued that the parties by "conduct, mutual understandings and agreement" modified the contract's payment terms regarding the services VCC performed, for which it did not submit invoices until June 2006.

OCGA § 9-9-6 (b) provides:

> Subject to subsections (c) and (d) of this Code section, a party *who has not participated in the arbitration* and who has not made an application to compel arbitration may apply to stay arbitration on the grounds that:
>
> (1) No valid agreement to submit to arbitration was made;
>
> (2) The agreement to arbitrate was not complied with; or
>
> (3) The arbitration is barred by limitation of time.

While most of the case law regarding waiver under OCGA § 9-9-6 (b) addresses waiving the right to arbitrate by participating in litigation, rather than waiving the right to stay arbitration by participating in the arbitration, the considerations that apply to waiving the right to arbitrate also apply to waiving the right to stay arbitration. See, e.g., *Tillman Group v. Keith*, 201 Ga. App. 680 (411 SE2d 794) (1991) (litigating the merits of a claim without seeking to initiate arbitration proceedings waives a party's right to insist upon arbitration).

Generally, parties cannot participate in the process — litigation or arbitration — and then change their minds after conducting discovery. "An agreement to arbitrate is waived by any action of a party which is inconsistent with the right of arbitration." *McCormick-Morgan, Inc. v. Whitehead Elec. Co.*, 179 Ga. App. 10, 13 (345 SE2d 53) (1986); accord *Wise v. Tidal Constr. Co.*, 261 Ga. App. 670, 675 (583 SE2d 466) (2003). Applying that concept to OCGA § 9-9-6 (b), a party also waives its right to litigation by taking action inconsistent with that right and participating in arbitration.

Atlantic Station argues that under OCGA § 9-9-6 (d), it has an absolute right to apply for a stay within 30 days after Vratsinas amended its claim, regardless of its participation in the arbitration process for 18 months or the substance of the amendment. OCGA § 9-9-6 (d) provides that after service of the demand for arbitration "or

any amendment thereof," the party served must apply to the court within 30 days for a stay of arbitration or is barred from denying the agreement is valid, timely, or had been complied with. The subsection concludes, "The right to apply for a stay of arbitration *may not be waived, except as provided in this Code section.*" (Emphasis supplied.)

> This section of the Code, if construed alone, would appear to authorize the contentions of counsel, but our system of law is not to be construed by single Code sections or single provisions of the law; the entire system must be construed as a whole to determine the intent and purpose of the law as applied to each particular case or state of facts.

*Lucas v. Smith*, 201 Ga. 834, 837 (41 SE2d 527) (1947). In other words, "[a] statute must be construed to give sensible and intelligent effect to all of its provisions and to refrain from any interpretation which renders any part of the statute meaningless." (Citations and punctuation omitted.) *Expedia, Inc. v. City of Columbus*, 285 Ga. 684, 689 (4) (681 SE2d 122) (2009).

Thus, OCGA § 9-9-6 (b) and (d) must be construed together, considering that (b) refers to (d), and (d) states that the right to apply for a stay may be waived "as provided in this Code section." It would be illogical to construe the statute to allow a party to fully participate in the arbitration process but still retain the absolute right to seek a stay any time the other party amends its statement of facts. If the party initiating the arbitration amends its claim to add an entirely new and different issue, then the respondent would have the right under OCGA § 9-9-6 (d) to seek a stay within 30 days regardless of whether it participated in arbitrating the original issues. But construing the statute as a whole, a party who has participated in the arbitration process has no right to apply for a stay simply because the initiator amends its statement of facts. This construction harmonizes subsection (b)'s provision allowing a party who has not participated in arbitration to apply for a stay with subsection (d)'s provision that the respondent's right to seek a stay may not be waived except as otherwise provided in the Code section.

VCC's demands for arbitration put Atlantic Station on notice that its claims arose out of an understanding between the parties and not from the written contracts. While Atlantic Station asserts that it did not know the basis for VCC's arbitration demand until VCC's second amended demand 18 months after its initial demand, VCC claimed in its very first arbitration demand that the parties had proceeded to collaborate under "mutual understandings" which

CALL LAW LIBRARY

*Judgment affirmed. Johnson, J., concurs. Dillard, J., concurs in judgment only.*[2]

DECIDED OCTOBER 29, 2010 —
RECONSIDERATION DENIED DECEMBER 15, 2010.

*Alston & Bird, Michael H. Shanlever, John I. Spangler III*, for appellant.

*Smith, Currie & Hancock, Kent P. Smith, Stephen G. Joy*, for appellee.