**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 10, 2013**

# In the Court of Appeals of Georgia

A13A0305. KING v. GENON ENERGY HOLDINGS, INC.

MCFADDEN, Judge.

Donald King filed a breach of contract action against GenOn Energy Holding, Inc., formerly known as Mirant Corporation, claiming he was entitled to a promised severance payment. The trial court granted summary judgment to GenOn. King appeals, arguing that a state court erred in transferring the case to superior court and that the superior court erred in granting summary judgment to GenOn. Because the transfer issue was not preserved for appellate review and under the terms of the contract King was not entitled to a severance payment, we affirm.

1. *Transfer to superior court.*

After dismissing his initial complaint, King filed the instant renewal action in the State Court of Fulton County. GenOn filed an answer and counterclaim for

reformation of the contract. GenOn moved to transfer the case to superior court on the ground that the state court did not have jurisdiction over its equitable counterclaim. The state court granted the motion and transferred the case to superior court. In superior court, both parties moved for summary judgment. While King argued that he was entitled to summary judgment on GenOn's counterclaim, he never objected to the transfer from state to superior court and certainly never obtained a ruling from the superior court on that issue.

We are a court for correction of errors below, and, in the absence of a ruling by the trial court, this court has nothing to review. *Hart v. Groves*, 311 Ga. App. 587, 588 (1) (716 SE2d 631) (2011).

> But [King] failed to object below about this specific [transfer] issue and thus did not give the trial court opportunity to correct the alleged error. . . . Generally, no matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further. That is, a party cannot ignore that which he or she thinks to be error, take a chance on a favorable outcome, and complain later.

*Lamb v. Javed*, 303 Ga. App. 278, 280 (1) (692 SE2d 861) (2010) (citations, punctuation and emphasis omitted). Because he acquiesced in the transfer of the case to the superior court, King cannot now complain.

2. *Summary judgment.*

King contends that the trial court erred in its summary judgment ruling on his claim for the severance payment, arguing that because his employment was terminated within a guaranteed two-year period he was entitled to the payment. However, as the trial court correctly found, even though King was transferred from one affiliated employer to another within the two-year period, he was continuously employed until after the end of that period and therefore the severance payment obligation was not triggered.

"On appeal from the grant or denial of summary judgment, we apply a de novo standard of review. The moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Zurich American Ins. Co. v. Heard*, ___ Ga. App. ___ (Case No. A12A2544, decided March 28, 2013).

So viewed, the evidence shows that in 2004, King was hired by Mirant Corporation and his job duties included supporting the operation of power-generating assets in the Caribbean. In 2007, in order to facilitate a sale of its Caribbean assets to a company called Marubeni Corporation, Mirant approached King about becoming an employee of Marubeni. In connection with that change of employers, Mirant

promised to make a defined payment to him if his employment with Marubeni and its affiliates was terminated within two years of the sale. The written agreement, set forth in a July 26, 2007 letter from Mirant to King, provides:

> In return for your agreement to work for Marubeni Corporation following Mirant Corporation's ("Mirant's" or "the Company's") sale of its Caribbean investments to Marubeni and its affiliates (collectively referred to as "Marubeni"), which has helped facilitate this transaction on behalf of the Company, the Company has decided that, should your employment with Marubeni terminate for any reason other than voluntarily, by death, or for cause (including performance) within two years of the Closing Date of the sale, Mirant will pay you $110,389 minus an amount equal to any gross severance payment you receive from Marubeni, less applicable deductions for federal, state and local taxes and withholdings. This payment will be made within 30 business days following delivery of proof of termination of your employment by Marubeni, including the reasons therefore and the terms of any severance payments received or to be received from Marubeni, and after execution by you of a general release of claims against Mirant.

The sale of Mirant's Caribbean assets closed on August 9, 2007. And King went to work for a subsidiary of Marubeni Corporation called Marubeni Caribbean Power Holdings, Inc. ("MCPH"). In 2009, Marubeni Corporation sold half of its Caribbean power portfolio to a company called TAQA Abu Dhabi National Energy Company PJS. Marubeni Corporation and TAQA each owned 50 percent of the new company called MaruEnergy Caribbean Ltd. ("MCL"). On March 12, 2009, King's supervisor at MCPH, Seiji Kawamura, notified King by two letters that his

4

employment with MCPH was ending, but that he would immediately be employed by MCL under the same terms as his job with MCPH. In one letter, Kawamura, writing as a senior vice president of MCPH, stated:

> As you know, as a result of a transaction with TAQA Abu Dhabi National Energy Company PJS, Marubeni has sold a portion of its ownership interest in its assets [in] the Caribbean. As a result, your employment with MCPH will end as of March 18, 2009. However, we understand that you will be offered immediate employment with the new entity, MaruEnergy Caribbean Ltd. (MCL), as of that same date, on the same terms and conditions as you had with MCPH, including recognition of your length of service with MCPH.

In the other letter, Kawamura, then writing as a senior vice president of MCL, stated: "We would like to offer you employment as of March 18, 2009, with MaruEnergy Caribbean Ltd. (MCL) on all of the same terms and conditions as you had with Marubeni Caribbean Power Holdings, Inc. (MCPH), as defined in your signed agreement with MCPH." King accepted the offer, left MCPH and started with MCL on the same day, with no break in his employment or compensation. The physical location of his job remained the same. A few months later, MCL changed its name to Marubeni TAQA Caribbean, Ltd. (Marubeni TAQA).

5

King claims that he is entitled to the severance payment from Mirant set forth in the 2007 letter-agreement because his employment with MCPH ended on March 18, 2009, which was within the designated two-year period. We disagree.

> Contract construction is generally a question of law for the court. We follow a three-step process in construing a contract, first determining if the contract language is clear and unambiguous. When a contract contains no ambiguity, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. If, however, the contract is unclear, we attempt to resolve the ambiguity by applying the rules of contract construction. Where the contract remains ambiguous even after we apply the rules of construction, then the parties' intent must be determined by the factfinder. Ambiguity exists when a contract is uncertain of meaning, duplicitous, and indistinct, or when a word or phrase may be fairly understood in more than one way. Under Georgia law, words in a contract generally bear their usual and common meaning and the usual and common meaning of a word may be supplied by common dictionaries.

*Global Ship Sys.v. Continental Cas. Co.*, 292 Ga. App. 214, 215-216 (1) (663 SE2d 826) (2008) (citations and punctuation omitted).

In this case, the letter-contract was clear and unambiguous in providing that "Marubeni" referred collectively to "Marubeni and its affiliates." The contract was further clear and unambiguous in providing that King was entitled to the severance payment only if his employment with Marubeni and its affiliates terminated within the applicable two-year period for any reason other than three specified circumstances

6

that do not apply to this case. However, the contract was unclear in that it did not define the term "affiliates."

Thus, the trial court correctly determined the usual and common meaning of this word as supplied by Black's Law Dictionary. As the trial court found, the seventh edition of Black's Law Dictionary defined "affiliate" as a "corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." The trial court further noted that this same definition is set forth in the eighth edition of the dictionary that was in effect when the contract in question was drafted. Indeed, in another case involving the word "affiliate," this court, after noting that dictionaries may supply the plain and ordinary meaning of a word in a contract, found that "[a]ccording to Black's Law Dictionary, the term 'affiliate' 'signifies a condition of being united; being in close connection, allied, associated, or attached as a member or branch.'" *Harkins v. CA 14th Investors*, 247 Ga. App. 549, 550 (544 SE2d 744) (2001). Given this usual and common meaning of the word, the trial court correctly found that MCL, later named Marubeni TAQA, was an affiliate of Marubeni because of its ownership interest in the company. The two companies were thus related, associated and in close connection based on this common ownership.

7

Furthermore, as previously noted, the plain language of the severance agreement unambiguously provided that King was entitled to the severance payment only if his employment with Marubeni *and its affiliates* terminated within the two-year period. However, the undisputed facts show that King's employment with Marubeni *and its affiliates* was not terminated within the two-year period. On the contrary, King was continuously employed by Marubeni and its affiliates during the applicable time period. Although his employment with one affiliate, MCPH, ended, he was immediately employed under the same terms and conditions by another Marubeni affiliate, MCL (later known as Marubeni TAQA), without any gap or interruption to his employment. As the trial court concluded, "King's transfer from MCPH to Marubeni TAQA did not trigger Mirant's obligation under the Contract. Based on the undisputed facts, King was employed by 'Marubeni and its affiliates' (either MCPH or Marubeni TAQA) for more than two years; Mirant has not breached the Contract and does not owe King the Severance Pay." Accordingly, the trial court did not err in granting summary judgment to GenOn, and denying summary judgment to King, on the breach of contract claim. See generally *Burns v. Reves*, 217 Ga. App. 316, 318 (1) (457 SE2d 178) (1995) (construction of a contract is a matter of law for the court that is well-suited to adjudication by summary judgment).

3. *Counterclaim for reformation.*

King claims that the trial court erred in failing to grant his motion for summary judgment on GenOn's counterclaim for reformation of the contract. However, "we cannot reach that issue because the trial court did not address the merits of his motion, but merely denied it as moot. Our review is limited to the scope of the ruling in the trial court as shown by the trial record; therefore, considering the merits of [that] motion for summary judgment is beyond the scope of our review." *McGonigal v. McGonigal*, 294 Ga. App. 427, 430 (3) (669 SE2d 446) (2008).

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*