**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RAY and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 3, 2018**

# In the Court of Appeals of Georgia

A18A0886. SALINAS et al. v. ATLANTA GAS LIGHT COMPANY.

A18A0887. ATLANTA GAS LIGHT COMPANY v. SALINAS et al.

RICKMAN, Judge.

John Salinas and his co-appellants (referred to collectively herein as "Salinas") appeal from a trial court order dismissing with prejudice their lawsuit against Atlanta Gas Light Company ("AGLC") and ordering the matter be resolved in arbitration. AGLC cross-appeals, arguing that although the trial court correctly dismissed the lawsuit, it erred by sending the matter to arbitration. For the reasons that follow, we reverse the dismissal of Salinas's suit.

"The arbitrability of disputes under the arbitration provision of a contract is a legal question, and the trial court was authorized to look at the entire record to make

this determination." (Citations and punctuation omitted.) *Odion v. Avesis, Inc.*, 327 Ga. App. 443, 446 (3) (b) (759 SE2d 538) (2014).

The record shows that Salinas contracted with SouthStar Energy Services LLC, d/b/a Georgia Natural Gas ("GNG"), a natural gas marketing company,[1] to provide natural gas service at certain real property pursuant to written terms of service. The terms of service included a clause requiring "Disputes" to be resolved in binding arbitration by the American Arbitration Association. "Dispute" was defined in the contract as "any dispute, claim, or controversy between you and GNG regarding any aspect of your relationship with GNG." For the purposes of the arbitration provision, "GNG" was defined as "SouthStar Energy Services LLC and its officers, directors, employees, members, *affiliates* and agents and any other party that you may contend is jointly or severally liable with any of the foregoing parties[.]" (Emphasis supplied.)

In January 2016, Salinas and other parties associated with the relevant property sued GNG and AGLC, a utility regulated by the Public Service Commission, in the State Court of Clayton County, alleging that GNG and AGLC improperly and without notice shut off the natural gas supply to the property, which eventually caused a loss

---

[1] GNG is certificated by the Georgia Public Service Commission as a natural gas marketer under the provisions of the Georgia Natural Gas Competition and Deregulation Act. OCGA § 46-4-159 et. seq. (the "Georgia Natural Gas Act").

2

of heat, thereby causing water pipes to burst, resulting in significant damage to Salinas's real and personal property. GNG and AGLC jointly responded with a motion to compel arbitration in accordance with the terms of service. Consequently, Salinas voluntarily dismissed the action without prejudice and filed a demand for arbitration with AAA against both GNG and AGLC.

The arbitration proceeded with discovery, and a final hearing was set for April 2017. Meanwhile, GNG filed a motion for summary judgment on the ground that under the terms of service, it was not legally responsible for the conduct of AGLC, which had turned off the natural gas at the property. The arbitrator agreed and granted GNG summary judgment on the grounds that (1) GNG, the marketing company, had no part in turning off the gas; (2) AGLC was not acting as GNG's agent at the time; (3) GNG did not ratify AGLC's action; (4) GNG and AGLC were not in a joint venture under Georgia law; and (5) the terms of service specifically barred claims against GNG for acts or omissions of AGLC. In so doing, the arbitrator found that "[AGLC] and GNG are separate entities with separate functions and requirements."

Only weeks from the scheduled final hearing, Salinas responded by filing a notice of withdrawal of the demand for arbitration and by filing the present action in Superior Court of Clayton County against AGLC alone, seeking a trial by jury and

a temporary restraining order ("TRO") and preliminary injunction to prevent the arbitrator from taking further action. The trial court denied the application for a TRO. Given these developments, however, the arbitrator stayed the final arbitration hearing pending a ruling by the superior court.

Once back in court, Salinas argued that because he had contracted for natural gas only with GNG, AGLC had no contractual right to compel arbitration of the claims and the arbitrator therefore lost jurisdiction of the matter once it dismissed GNG. In addition to answering the complaint, AGLC filed a motion to dismiss the action on the ground that all of the claims raised in the complaint "were, and are, subject to binding arbitration and there are no claims left for the Court to resolve." Following a hearing, the superior court found that although GNG and AGLC may not have been joint venturers for the purpose of providing natural gas to Salinas, they were affiliates; thus Salinas was bound by the arbitration clause that mandated binding arbitration for claims against GNG and its "affiliates." Accordingly, the trial court dismissed the court action with prejudice and ordered that the matter be returned to mandatory arbitration. This appeal and cross-appeal followed.

1. In two enumerations of error, Salinas contends the trial court erred by concluding that AGLC was an affiliate of GNG and, consequently, erred by concluding that Salinas was bound to arbitrate the claims against AGLC.

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (Citations and punctuation omitted.) *Howsam v. Dean Witter Reynolds*, 537 U. S. 79, 83 (II) (123 SCt 588, 154 LE2d 491) (2002). "The question whether the parties have submitted a particular dispute to arbitration, i.e., the 'question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."[2] (Citation and emphasis omitted.) Id. at 83 (II); see also *AT & T Tech. v. Communications Workers*, 475 U. S. 643, 649 (II) (106 SCt 1415, 89 LE2d 648) (1986) ("[T]he question of arbitrability . . . is undeniably an issue for judicial determination."); *Primerica Financial Svcs. v. Wise*, 217 Ga. App. 36, 40 (5) (456

---

[2] Here, the definition of "Dispute" in the terms of service "includes any dispute regarding whether a particular controversy is subject to arbitration, including any claim as to the enforceability of this Arbitration Provision." But neither party contends on appeal that the trial court was not authorized to address the enforceability of the arbitration agreement as to AGLC, a party not named in the arbitration agreement. Compare *Brown v. RAC Acceptance E., LLC*, 303 Ga. 172, 175 (2) (a) (809 SE2d 801) (2018) ("[W]here there is clear and unmistakable evidence that the parties wanted an arbitrator to resolve the dispute about arbitrability, courts must give effect to the parties' agreement.") (citation and punctuation omitted).

SE2d 631) (1995) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute.") (citation and punctuation omitted).

As for the governing law, the relevant arbitration agreement provides that "[t]he Federal Arbitration Act ("FAA"), not state arbitration law, will govern the arbitrability of all Disputes." Nevertheless, nothing in the FAA "purports to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (III) (129 SCt 1896, 173 LE2d 832) (2009).

Under Georgia law, "the construction of an arbitration agreement, like any contract, is a question of law, subject to de novo review." *Helms v. Franklin Builders, Inc.*, 305 Ga. App. 863, 864 (700 SE2d 609) (2010). The usual rules of contract construction apply:

> First, we must determine if the contract language is ambiguous, and, if so, then we apply the appropriate rules of construction set forth in OCGA § 13-2-2. Where the language of a contract is plain and unambiguous, however, no construction is required or permissible and the terms of the contract must be given an interpretation of ordinary significance.

(Citation and punctuation omitted). *Wedemeyer v. Gulfstream Aerospace Corp.*, 324 Ga. App. 47, 50 (1) (749 SE2d 241) (2013) (applying rules of contract construction to arbitration agreement). But "[w]here a contractual term is ambiguous, . . . the contract must be construed against the party undertaking the contractual obligations." *Pate v. Pate*, 280 Ga. 796, 797 (1) (631 SE2d 103) (2006), citing OCGA § 13-2-2 (5); see also *Anderson v. Southeastern Fidelity Ins. Co.*, 251 Ga. 556, 557 (307 SE2d 499) (1983) ("an ambiguity in a document should be construed against its draftsman.").[3]

As shown above, the arbitration clause at issue expressly applied to GNG and its "affiliates," but affiliate is not defined therein. We therefore look for the "usual and common signification" of the word. See OCGA § 13-2-2 (2).

The term "affiliate" is defined over 20 times in the Georgia Code, and the definitions vary. See, e.g., OCGA §§ 7-1-4 (a corporation or similar organization is an "affiliate" of a financial institution if, inter alia, the financial institution controls the election of a majority of directors, trustees, or other persons exercising similar

---

[3] The terms of service offered by GNG could also be considered a contract of adhesion, "which has been defined as a standardized contract offered on a 'take it or leave it' basis and under such conditions that a consumer cannot obtain the desired product or service except by acquiescing in the form contract. Such contracts, while permissible, are construed strictly against the drafter." (Citation and punctuation omitted.) *Hospital Auth. of Houston County v. Bohannon*, 272 Ga. App. 96, 98-99 (1) (611 SE2d 663) (2005).

functions at the corporation, or where the financial institution or its shareholders own or control 50 percent of the shares of the corporation, or where the corporation owns or controls 50 percent of the financial institution); 14-2-1110 (1) ("'Affiliate' means a person that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with a specified person"); 18-2-71 (1) (B) ("Affiliate" has multiple definitions, including "[a] corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote by the debtor or a person who directly or indirectly owns, controls, or holds with power to vote 20 percent or more of the outstanding voting securities of the debtor. . .").

Second, "dictionaries may supply the plain and ordinary meaning of a word." *Harkins v. CA 14th Inv'rs, Ltd.*, 247 Ga. App. 549, 550 (544 SE2d 744) (2001). The current edition of Black's Law Dictionary defines "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or *sibling corporation*." (Emphasis supplied.) Black's Law Dictionary (10th ed. 2014). Black's defines "sibling" as "[a] brother or sister." Id. According to AGLC, a company named AGL Resources Inc. owns 100 percent of both AGLC and Georgia Natural Gas Company ("GNGC"); GNGC, in turn, owns 85

8

percent of GNG. Thus, the two entities are not siblings, and therefore not affiliates, under these definitions.

Further, courts from other jurisdictions have found that common ownership is not alone sufficient to establish that two entities are affiliated. See *Travelers Indem. Co. v. United States*, 543 F2d 71, 76 (III) (9th Cir. 1976) ("[A]ffiliated" envisions "an intimate business relationship in which significant aspects of financial and managerial control of [one party] and the affiliate . . . are integrated. More is required than common ownership."); *Magicon, LLC v. Weatherford International*, (Case No. 4:08-CV-03636, decided August 14, 2009) (S.D. Tex. 2009) (examining the derivation and several definitions of "affiliate," thereby showing a significant basis for concluding that corporate siblings are not affiliates where neither has control over the other); see also *Omnicom Group v. 880 W. Long Lake Assocs.*, 504 F. App'x 487, 491 (II) (A) (6th Cir. 2012) ("[T]here is no one definition of 'affiliates.'").

Given these varying definitions of "affiliate" as applied to the ownership structure of AGLC, we conclude that the term as used in the contract at hand is

ambiguous.[4] See generally *Clark v. AgGeorgia Farm Credit ACA*, 333 Ga. App. 73, 77 (1) (a) (775 SE2d 557) (2015) (defining ambiguity).

We turn then, to the rules of construction. First, "[t]he construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." OCGA § 13-2-2 (4). The terms of service reference AGLC numerous times outside of the arbitration clause but not once within it. For example, the terms of service define AGLC as the distributor of natural gas "on behalf of GNG *and other marketers*." (Emphasis supplied). The terms of service further provide that the customer's bill will include certain pass-though charges from AGLC; that AGLC will maintain and read the meter; that AGLC will turn on the gas but that GNG is not responsible for any AGLC connection delays; that customer changes to a new marketer will be processed by

---

[4] Two cases from this Court that found the meaning of affiliate unambiguous in certain settings are distinguishable. In *King v. GenOn Energy Holdings*, 323 Ga. App. 451, 455 (2) (747 SE2d 15) (2013), this Court held that the trial court correctly determined that the term affiliate applied to a parent corporation and a corporation owned in part by a subsidiary of the parent corporation, i.e., a grand-child corporation. In *Harkins v. CA 14th Investors, Ltd.*, 247 Ga. App. 549, 550 (544 SE2d 744) (2001), this Court determined that two corporate entities were "related or affiliated," by relying, in part, on the definition of "related." In addition, neither of these cases considered the multiple, varied definitions of affiliate as found in the Georgia Code.

AGLC and the new marketer; and that GNG is not responsible for any outage of service caused by AGLC. Despite these many references to AGLC elsewhere in the terms of service, the arbitration clause itself does not reference AGLC expressly a single time. That, plus the fact that most of the references to AGLC in the terms of service highlight the separation rather than the affinity of GNG and AGLC and show that AGLC has a relationship with other natural gas marketers, buttresses our conclusion that the contract is ambiguous as to whether AGLC is an "affiliate" of GNG under the terms of service in the arbitration clause.

Here, GNG undertook to provide natural gas to Salinas and it clearly drafted the agreement; it is copyrighted by that company. Because the contract is ambiguous as to whether AGLC is an "affiliate" of GNG under the terms of service, the term must be construed in favor of Salinas as not including AGLC. The trial court therefore erred by concluding that AGLC is an affiliate of GNG as that term is used in the arbitration clause found in the terms of service.

2. AGLC counters that the trial court's dismissal of Salinas's court action should be affirmed on the alternative ground that Salinas had no right to walk away from the arbitration proceedings. AGLC argues that Salinas waived his right to

litigate the dispute with AGLC in court by participating in arbitration for many months, almost to the date of the final hearing.

Even where an arbitration agreement is governed by federal law, "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, [and] waiver and estoppel." (Citation and punctuation omitted.) *Arthur Andersen*, 556 U.S. at 631 (III). "Waiver is the voluntary relinquishment of a known right and may be established by express statements or implied by conduct." *Kennestone Hosp. v. Hopson*, 273 Ga. 145, 148-149 (538 SE2d 742) (2000). "An implied waiver is one shown by a party's decisive, unequivocal conduct reasonably inferring the intent to waive. Ordinarily, silence is insufficient to establish a waiver unless there is an obligation to speak." (Citations and punctuation omitted.) Id. "While normally the question of waiver is a matter for the jury, where . . . the facts and circumstances essential to the waiver issue are clearly established waiver becomes a question of law." (Citation and punctuation omitted.) *St. Mary's Hosp. of Athens v. Cohen*, 216 Ga. App. 761, 763 (1) (456 SE2d 79) (1995).

Here, clearly established facts show that Salinas dismissed the state court lawsuit and demanded arbitration in direct response to a joint motion by GNG and AGLC to compel arbitration under the contract, which required Salinas to arbitrate claims against GNG and "and any other party that you may contend is jointly or severally liable." Later, less than three weeks after GNG obtained summary judgment from the arbitrator on the ground that it was not liable for AGLC's actions, Salinas withdrew from the arbitration and filed the present action in superior court on the grounds that AGLC was not a party to the arbitration agreement and that, therefore, Salinas was not bound to arbitrate claims against AGLC.

In light of our holding in Division 1 that the arbitration provision of the contract did not unambiguously include claims against AGLC, we conclude as a matter of law that these facts do not reveal a voluntary relinquishment of Salinas's right to litigate in court. There are no facts showing decisive, unequivocal conduct reasonably inferring the intent to waive that right. Rather, the facts show that Salinas was required to arbitrate a claim of joint and several liability until GNG sought and obtained a dismissal in the arbitration. Salinas reacted in a timely way to that event by withdrawing from the arbitration, filing suit, and seeking to restrain the arbitrator from further proceedings.

13

In addition to lacking in precedential value, we find *Atlantic Station, LLC v. Vratsinas Const. Co.*, 307 Ga. App. 398 (705 SE2d 191) (2010) (physical precedent only), upon which AGLC relies, to be distinguishable. In that case, this Court held that by participating in an arbitration for 18 months, a party to an arbitration agreement waived its right to seek a stay of arbitration commenced by the other party to the arbitration agreement. Id. at 403-404. In the present case, AGLC, the party seeking to enforce an arbitration agreement, was never a party to that agreement. And Salinas withdrew from the arbitration once GNG obtained a dismissal.[5]

In sum, we conclude that AGLC is not a party to the arbitration clause, that the trial court erred in so concluding, and that Salinas has not waived the right to proceed with litigation. Our holding moots the issue raised in the cross appeal.

*Judgment reversed. McFadden, P. J., and Ray, J., concur.*

---

[5] In addition, *Atlantic Station* is based, in part, on the Georgia Arbitration Code whereas the original parties to the arbitration clause at issue agreed to be governed by the FAA.