**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, P. J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 10, 2025**

# In the Court of Appeals of Georgia

A24A1853. JACKSON et al. v. STEVENSON et al.

MCFADDEN, Presiding Judge.

Respondents Richard Jackson and several of his companies appeal the superior court order confirming an arbitration award and entering judgment in favor of claimants Mark Stevenson and his companies. The dispositive question before us is whether RICSHA Real Estate LLC, an entity wholly owned and controlled by Jackson, was properly added as a party to the arbitration.

The arbitrator found that claimant Stevenson's "conspiracy claims against the Respondents and RICSHA are based on the same general facts and circumstances, arise from the same essential transaction or occurrence, are based on the same operative facts, and are inherently intertwined with the other pending claims in this

case" and so held that "RICSHA should be added as a party to afford complete relief between all of these parties for the claims and counterclaims involved in this arbitration." We hold that the arbitrator's findings are sustainable under evidence of record, that his holding is sustainable under the controlling law, and so that the superior court did not err in confirming the award. So we affirm.[1]

1. *Background*

The record shows that respondent Jackson and claimant Stevenson, through various companies that each owned, were members of a real estate development joint venture. The Jackson entities owned 70 percent of the venture and the Stevenson entities owned 30 percent.

The venture was governed by two operating agreements that contained identical sections requiring arbitration under the Federal Arbitration Act ("FAA") of "[a]ny dispute, controversy or claim arising out of or relating to" the agreements. Under a separate consulting agreement, claimant Stevenson managed the operations of the venture.

---

[1] Oral argument was held in this case on October 15, 2024, and is archived on the court's website. See Court of Appeals of Georgia, Oral Argument, Case No. A24A1853 (Oct. 15, 2024), available at https://vimeo.com/1020555896.

In 2022, the Jackson entities sought to terminate the venture. The operating agreements provided that the member who wanted to end the relationship could present a "Buy/Sell Notice" to the other member to buy them out or, at the other member's election, to sell their ownership interest to the other member. The operating agreements required the transaction to close within 90 days after the right to buy or sell had been exercised.

The Jackson entities offered to buy out the Stevenson entities' interest for $3 million or to sell their own interest to the Stevenson entities for $7 million, along with the Stevenson entities paying debt owed by the venture. The Stevenson entities opted to buy out the Jackson entities. Less than a week later, Jackson informed Stevenson that he was terminating the consulting agreement for cause.

The Stevenson entities ("claimants") filed a demand for arbitration with the American Arbitration Association under the arbitration clauses in the two operating agreements. The claimants named Jackson and his companies as respondents.

Initially, the claimants sought the arbitrator's supervision of the closing, but once the deadline for the closing had expired, they amended their statement of claim to allege that the respondents had engaged in misconduct to foil the closing. The

claimants asserted claims for, among other things, breach of contract, breach of fiduciary duty, and aiding and abetting breaches of fiduciary duty. The respondents filed a counterclaim seeking a declaration that their termination of the consulting agreement was for cause because of the claimants' mismanagement and fraud.

Eventually, the claimants sought to include RICSHA, another Jackson-owned company, as a respondent. The claimants alleged that the respondents and RICSHA had conspired to deprive the venture of valuable assets that were part of the venture when the claimants agreed to buy the respondents' interest for $7 million and that the value of the the venture would be reduced by removal of those assets. The arbitrator ordered RICSHA to be added.

After a six-day evidentiary hearing, the arbitrator issued a final award ruling partly in favor of the claimants and partly in favor of the respondents. The arbitrator found that the claimants' management of the venture resulted in material financial loss, authorizing termination of the consulting agreement.

The arbitrator also found, however, that the respondents breached the buy-sell provision in the operating agreements in two ways. First, the arbitrator found that the respondents improperly adjusted the venture's finances by increasing the debt the

4

venture owed to a Jackson-owned company, which increased the amount the claimants would have to pay at closing. Second, the arbitrator found that, after the claimants had exercised the right to buy, the respondents improperly removed from the venture's balance sheet certain assets, specifically parcels and options to purchase parcels of property, including one that was technically owned by now-respondent RICSHA but which had always been recognized as an asset of the venture.

The net result was an award to the claimants. The arbitrator awarded the claimants as compensatory damages $3,752,700 plus interest against the respondents and RICSHA.

The claimants filed an application in superior court to confirm the award. Now-respondent RICSHA filed an application to vacate the award and, 11 days later, a separate motion to vacate the award. The other respondents answered the confirmation application. More than two months later, the other respondents filed a "notice of joinder" in RICSHA's motion to vacate.

The superior court found that the respondents other than RICSHA "did not file a timely and sufficient motion to vacate, so their purported opposition to confirmation [was] barred by the FAA's statute of limitation[ ]." The court found that

the arbitrator did not exceed his powers by including RICSHA as a party to the arbitration, and so denied its motion to vacate the award. The court granted the application to confirm the award, and RICSHA and the other respondents filed this appeal.

2. *Applicable law*

The FAA, 9 USC § 1 et seq., applies to the arbitration at issue in this appeal. The arbitration clauses in the operating agreements "provided — and the parties [to the appeal] do not question — that [the] arbitration would proceed pursuant to the [FAA]. . . ." *Wells Fargo Clearing Svcs. v. Leggett*, 365 Ga. App. 8, 9 (876 SE2d 888) (2022). "When the FAA applies, as it does here, it must be applied using federal substantive law." *SunTrust Bank v. Lilliston*, 302 Ga. 840, 842 (809 SE2d 819) (2018) (citation and punctuation omitted).

"On appeal, we review the superior court's conclusions of law de novo and its factual findings for clear error." *Wells Fargo*, 365 Ga. App. at 10-11. See also *Adventure Motorsports Reinsurance v. Interstate Nat. Dealer Svcs.*, 313 Ga. 19, 25 (1) (867 SE2d 115) (2021) ("In reviewing a trial court's order confirming or vacating an arbitration

award, the appellate court reviews de novo the trial court's resolution of questions of law.").

The trial court's review of an arbitration award in a confirmation proceeding is strictly limited. "It is well established under both federal and Georgia law that judicial review of an arbitration is among the narrowest known to the law." *Berger v. Welsh*, 326 Ga. App. 290, 291 (1) (756 SE2d 545) (2014) (citations and punctuation omitted). The FAA does not allow courts "to conduct general review for an arbitrator's legal errors in deciding whether to enforce an arbitration award[.]" *Brown v. RAC Acceptance East*, 303 Ga. 172, 177 (2) (c) (809 SE2d 801) (2018) (citation and punctuation omitted). "Under the FAA, courts may vacate an arbitrator's decision only in very unusual circumstances." *Oxford Health Plans v. Sutter*, 569 U. S. 564, 568 (II) (133 SCt 2064, 186 LE2d 113) (2013) (citation and punctuation omitted).

"When presented with a petition to confirm an arbitration award, a trial court may not inquire into the merits of the dispute or consider the sufficiency of the evidence. A confirmation proceeding does not create a forum for relitigating arbitrated issues." *Lanier Worldwide v. BridgeCenters at Park Meadows*, 279 Ga. App. 879, 881 (1) (633 SE2d 49) (2006) (citations and punctuation omitted). See generally *Johnson v.*

*Directory Assistants*, 797 F3d 1294, 1302 (III) (D) (11th Cir. 2015) ("mere disagreement with an arbitrator's legal or factual determinations does not justify vacatur under [9 USC] § 10 (a) (4)"). See also *Major League Baseball Players Assn. v. Garvey*, 532 U. S. 504, 509 (121 SCt 1724, 149 LE2d 740) (2001) ("the arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award") (citation and punctuation omitted).

We reject the respondents' and RICSHA's argument that we review de novo the arbitrator's decision to include RICSHA in the arbitration. They cite *Waddell v. Holiday Isle*, No. CIV. A. 09-0040-WS-M, 2009 WL 2413668, at *8 (II) (A) (1) (S.D. Ala. Aug. 4, 2009), an unpublished opinion from the United States District Court for the Southern District of Alabama. That case involved the resolution of a claim that the arbitrator exceeded his powers by including two individuals who were not parties to the arbitration agreement. But the district court was not considering the arbitrator's ruling on the issue, because the arbitrator did not rule on the issue: the individuals never raised the issue in the arbitration proceedings, they consented to arbitrate, they participated in the arbitration, and they never suggested opposition to arbitration. Id.

8

at *8-9. So, unlike here, there was no fact finding or reasoning of the arbitrator to defer to and the district court was deciding the issue in the first instance.

### 3. *Inclusion of RICSHA in the arbitration*

RICSHA and the other respondents argue that the superior court erred in confirming the award because the arbitrator exceeded his powers by including RICSHA in the arbitration. We hold that the superior court did not err in confirming the award.

The FAA provides four grounds for vacating an arbitration award, including the ground at issue here: "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made[.]" 9 USC § 10 (a) (4).

> In light of the federal policy favoring arbitration at work here, the [c]ourt's task is to resolve all doubt in favor of the arbitrator's authority to award a particular remedy. This approach is fully consistent with the presumption of correctness afforded arbitration awards and the summary nature of court confirmation of such awards. In fact, the 9 USC[ ] § 10 (a) (4) prohibition against arbitrators' exceeding their powers is to be accorded the narrowest of readings.

*Hilliard v. J. C. Bradford & Co.,* 229 Ga. App. 336, 342-343 (4) (citations and punctuation omitted). "Our inquiry focuses on whether the arbitrator[ ] had the power based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[ ] correctly decided that issue."*Banco de Seguros del Estado v. Mut. Marine Office*, 344 F3d 255, 262 (IV) (A) (2d Cir. 2003) (citation and punctuation omitted). Indeed, an arbitration award should be confirmed "despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." Id. at 260 (I) (citation and punctuation omitted). See generally *Johnson*, 797 F3d at 1302 (III) (D) (11th Cir. 2015) (disagreement with an arbitrator's factual and legal conclusions does not justify vacatur under 9 USC § 10 (a) (4)).

RICSHA and the other respondents argue that the arbitrator exceeded his powers in forcing RICSHA to arbitrate since RICSHA did not sign either operating agreement containing the arbitration clause. As the superior court found in confirming the award, the law allowed the arbitrator to join RICSHA.

"[N]othing in the FAA purports to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by

them)." *Salinas v. Atlanta Gas Light Co.*, 347 Ga. App. 480, 482-483 (1) (819 SE2d 903) (2018) (citation and punctuation omitted) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U. S. 624, 630 (III) (129 SCt 1896, 173 LE2d 832) (2009)). See also *Lawson v. Life of the South Ins. Co.*, 648 F3d 1166, 1170-1171 (II) (11th Cir. 2011) ("the applicable state law provides the rule of decision for that question"). Those "traditional principles of state law allow a contract to be enforced by *or against* nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Anderson*, 556 U. S. at 631 (III) (citation and punctuation omitted; emphasis added).

RICSHA and the other respondents argue that the arbitrator based his decision to add RICSHA on only two grounds: 1) because RICSHA is wholly owned and controlled by Jackson; and 2) because the claimants' claims against RICSHA were inherently intertwined with their claims against the signatory respondents. So, they argue, the arbitrator did not find that any of the limited, traditional principles of state law had been met. On the contrary, the arbitrator applied principles of estoppel, a legal theory raised by the claimants in the arbitration, although he did not use that word,

and the superior court confirmed the award based on those principles. See *Hilliard*, 229 Ga. App. at 340 (2) ("as a general rule, arbitrators are free to apply broad principles of justice and good conscience and decide according to their concept or notion of justice").

The arbitrator found the following regarding adding RICSHA:

[T]here has been good cause shown that RICSHA should be added as a party to this arbitration. RICSHA, the entity that held the option for the Real Estate Venture to buy [one of the parcels] at cost, which option Respondents now contend is invalid, is wholly owned and controlled by Respondent Jackson. . . . Claimants' conspiracy claims against the Respondents and RICSHA are based on the same general facts and circumstances, arise from the same essential transaction or occurrence, are based on the same operative facts, and are inherently intertwined with the other pending claims in this case, and . . . RICSHA should be added as a party to afford complete relief between all of these parties for the claims and counterclaims involved in this arbitration.

The superior court, in turn, found that the arbitrator had considered allegations and evidence of collusion between RICSHA and the other respondents and that the claims arising from RICSHA's concerted misconduct were intertwined with the other respondents'.

"[A]pplication of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 338–339 (2) (685 SE2d 304) (2009) (citation and punctuation omitted). See also *SCSJ Enterprises v. Hansen & Hansen Enterprises*, 319 Ga. App. 210, 213 (2) (a) (734 SE2d 214) (2012) (physical precedent only) (rejecting argument that arbitrator exceeded his authority by issuing an award against a nonparty to the arbitration agreement and holding that "under both the Georgia Arbitration Code and federal law, in certain circumstances, the theory of equitable estoppel provides a means of bringing a nonsignatory within the terms of an arbitration agreement") (citation and punctuation omitted); *Helms v. Franklin Builders*, 305 Ga. App. 863, 866 (700 SE2d 609) (2010) ("[U]nder both the [Georgia Arbitration Code] and federal law, in certain circumstances, the theory of equitable estoppel provides a means of bringing a nonsignatory within the terms of an arbitration agreement."). Equitable estoppel "applie[s] when there is a tight relatedness of the parties, contracts, and controversies." 21 Williston on Contracts § 57:19 (4th ed.).

The principles of this kind of estoppel have been applied in the context of arbitration in Georgia. For example, in *Order Homes*, 300 Ga. App. 332, we held that nonsignatories to the arbitration agreement could compel the signatory claimants to arbitrate their claims against the other signatory as well as nonsignatories when the claimants alleged interdependent claims and concerted misconduct between a signatory and the nonsignatories. Id. at 339 (2). See also *Price v. Ernst & Young, LLP*, 274 Ga. App. 172, 176 (2) (617 SE2d 156) (2005); *Lankford v. Orkin Exterminating Co.*, 266 Ga. App. 228, 231-232 (3) (597 SE2d 470) (2004); *Autonation Financial Svcs. Corp. v. Arain*, 264 Ga. App. 755, 759 (3) (592 SE2d 96) (2003) (physical precedent only). "Otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Autonation*, 264 Ga. App. at 759 (3) (physical precedent only) (citation and punctuation omitted).

Although these cited cases involved nonsignatories seeking to compel signatories to arbitrate, the courts did not confine their holdings to those circumstances. And, as noted above, in *Salinas*, 347 Ga. App. 480, we held that "[e]ven where an arbitration agreement is governed by federal law, traditional

14

principles of state law allow a contract to be enforced . . . *against nonparties* to the contract through . . . estoppel." Id. at 485–486 (2) (citation and punctuation omitted; emphasis added).

Other courts have applied these principles to compel arbitration against a nonsignatory to the contract containing the arbitration provision. See *Romney v. Franciscan Med. Group*, 349 P3d 32, 42 (Wash. Ct. App. 2015) ("Where claims are based on the same set of facts and inherently inseparable, the court may order arbitration of claims against the party even if that party is not a party to the arbitration agreement."). And the Eleventh United States Circuit Court of Appeals has acknowledged that Georgia law allows it. *Lawson,* 648 F3d at 1172 (II) (B) (holding that under Georgia law, "[e]quitable estoppel allows a nonsignatory to an arbitration agreement . . . to be compelled by a signatory to arbitrate under certain circumstances in which fairness requires doing so"). See also *Developers Sur. & Indem. Co. v. Carothers Constr.*, No. 1:17-CV-1979-SCJ, 2018 WL 8996378, at *1 (N.D. Ga. Feb. 27, 2018) (same).

We conclude that the respondents and RICSHA have not shown that the arbitrator exceeded his powers, 9 USC § 10 (a) (4), or that the superior court's ruling confirming the award is erroneous. *Hilliard*, 229 Ga. App. at 341 (2).

3. *Other issues*

Because we hold that the superior court did not err in confirming the award, we do not reach the other issues raised in this appeal. RICSHA and the other respondents argue that the award is indivisible and so that, because the award against RICSHA was erroneous, the entire award, not just the erroneous award against RICSHA, must be vacated. But since we conclude that the award against RICSHA was not erroneous, this argument is moot. The respondents other than RICSHA argue that the superior court erred by finding that they had waived appellate review and that only RICSHA had timely challenged the award. Since those respondents' claims on appeal are the same as RICSHA's, and we have considered those claims, rejected them, and affirm the confirmation of the award, we do not reach these issues.

We deny the claimants' motion to dismiss this appeal and their "motion for delay damages."

*Judgment affirmed. Mercer, C. J., and Rickman, P. J., concur.*