A01A0456. EASTSIDE GARDENS OF SNELLVILLE, LLC v. SIMS.
(547 SE2d 383)

MIKELL, Judge.

James C. Sims entered a Right of First Refusal Agreement (the "Agreement") with Eastside Gardens of Snellville, LLC ("Eastside") pertaining to a parcel of land that he owns (the "property"). The property is adjacent to an assisted living center owned by Eastside.[1] This case arises out of a declaratory action that Sims filed because of Eastside and Racetrac Petroleum, Inc.'s ("Racetrac") dispute over the appropriate construction of the Agreement. The trial court determined that Racetrac was entitled to consummate its purchase of the property. We affirm.

"In reviewing a grant or denial of summary judgment, this Court conducts a de novo review of the evidence."[2] To prevail at summary

---

[16] (Citations and punctuation omitted.) *Young*, supra at 402 (3).
[17] Id.
[18] Id.
[1] Sims is a member of Eastside Gardens, LLC.
[2] (Citation and punctuation omitted.) *Carter v. Tokai Financial Svcs.*, 231 Ga. App. 755 (500 SE2d 638) (1998).

judgment under OCGA § 9-11-56 (c), the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmovant, warrant judgment as a matter of law.[3]

The Agreement provides that Sims cannot sell the property to a third party unless he first tenders the written offer to sell the property to Eastside under terms substantially identical to those offered in the third party's written offer. Eastside then has 60 days to accept or reject the offer; its failure to respond constitutes a rejection. In February 1999, Racetrac made a written offer to purchase the property. Sims' real estate agent, Geoffrey Hurdle, conveyed the offer to Eastside.[4] Eastside did not respond within the 60-day response period. Sims and Racetrac did not close the transaction thereafter, however, because of zoning complications that Racetrac encountered.[5] The dispute arose from the events that ensued.

Sims authorized Hurdle to resubmit Racetrac's offer to Eastside. Hurdle wrote: "Per the contract between Racetrac Petroleum and James C. Sims, I find it necessary to give you notice again of the sale of the property. . . . You have sixty days in which to act upon your right of first refusal." Racetrac was copied on the letter. On September 28, 1999, Eastside replied: "Our understanding of the Right of First Refusal Agreement is that we shall purchase the property under the same terms and conditions as the Racetrac offer (received August 2, 1999), subject to our securing the necessary financing."

After Sims informed Hurdle and Paul Bland, Racetrac's real estate representative, that Eastside had exercised its right to purchase the property, Bland drafted a letter for Sims to type on his letterhead and send to Eastside. The letter provided that Eastside's notice was deficient because it contained a financing contingency and because Eastside had not provided earnest money; thus, Racetrac had the right to acquire the property.

On the following day, October 1, 1999, Eastside informed Sims that it had removed the financing contingency and was sending the earnest money to Hurdle. Sims provided Hurdle's fax number to Eastside.[6] Eastside sent a letter to Hurdle's office removing the financing contingency and delivering the earnest money. Also, Sims called Bland and informed him by voice mail of Eastside's actions.

On Saturday, October 2, 1999, Bland faxed a letter to Sims

---

[3] Id.

[4] For purposes of the commencement of the 60-day response period, the letter was deemed received by Eastside on March 16, 1999.

[5] Racetrac's offer was conditioned upon the final rezoning of the property.

[6] Though the third-party offer provided for the delivery of the earnest money to Sims, Sims did not object to its delivery to Hurdle.

maintaining that Racetrac was still entitled to purchase the property because Eastside had not sent the earnest money directly to Sims. On Monday, October 4, 1999, Hurdle wrote a letter to Eastside informing it that the earnest money should be sent to Sims and gave it Sims' address. On October 6, 1999, Brad Johnson, Eastside's manager, informed Sims that a separate check for the earnest money would be issued directly to him.[7]

On November 8, 1999, Sims filed a declaratory action requesting that the court determine the legal rights and interests of the parties. Eastside filed a motion for partial summary judgment, arguing that it properly exercised its right of first refusal. Racetrac filed a motion for summary judgment, arguing that it has the legal right to consummate its purchase of the property from Sims. The trial court granted Racetrac's motion and denied Eastside's motion. Eastside appeals both orders.

1. In Eastside's first enumeration of error, it argues that the trial court erred in holding that Eastside did not have multiple opportunities to exercise its right of first refusal. We disagree. The trial court correctly ruled that the Agreement provided Eastside one opportunity to exercise its right of first refusal as to Racetrac's written offer to purchase the property.

"Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. . . . Parol evidence is not admissible to contradict or construe an unambiguous contract."[8] The portions of the Agreement in dispute provide:

> 3. If [Eastside] rejects or fails to accept the Refusal Offer within the sixty (60) day period . . . , then [Sims] may proceed to close the transactions contemplated in the Third Party Offer in accordance with its terms within sixty (60) days after expiration of [Eastside's] sixty (60) day response period or notice to [Sims] of [Eastside's] rejection thereof. . . . 4. Should [Sims] not sell the Property in accordance with the terms of the Third Party Offer, then [Sims] may not thereafter sell any part of the Property without first offering it to [Eastside] pursuant to this Agreement, and the terms hereof shall continue to be effective.

The pertinent question on appeal is whether the contract provides that the transaction must be closed with the third party within 60

---

[7] At the time of his deposition, Sims had not returned the check.

[8] (Citations omitted.) *Eichelkraut v. Camp*, 236 Ga. App. 721, 724 (1) (513 SE2d 267) (1999).

days of the expiration of Eastside's response period. We find that it unambiguously does not. "Where the language of the contract is plain, unambiguous, and capable of only one reasonable interpretation, construction of the contract is not permitted, and the language of the contract is given effect."[9] Further, "the language used is given its literal meaning, and [common] ordinary words are given their usual significance."[10] The contract provides that upon Eastside's failure to accept or reject the offer, Sims "may" proceed to close the transaction. The Agreement does not provide that Sims "shall" or "must" close the transaction within 60 days of the expiration of Eastside's response period. Instead, it provides that Sims "may" proceed to close the transaction "in accordance with" the third-party offer's terms, which in this case permitted the passage of time necessary to rezone the property.

Even if we applied the rules of construction to the Agreement, which we are not required to do in the face of plain, unambiguous language such as that utilized here,[11] our decision would be the same. Similar to that discussed above, the rules of construction also provide that words are to be given their usual and common significance.[12] Thus, the terms "may proceed to close" and "in accordance with its terms," given their common significance, support the finding that there was no contractually imposed time limit within which the transaction had to be closed. Further, "[p]ursuant to the rule of construction set forth at OCGA § 13-2-2 (5), the contract will be construed strictly against the . . . drafter."[13] Eastside drafted the Agreement. Thus, applying this rule, we construe against Eastside the fact that it did not specifically provide therein what it now argues. Finally, the rules provide that if time is of the essence in a contract, it must be so stated.[14] It was not.

Section four of the Agreement provides that if Sims did not sell the property in accordance with the third-party offer, then any subsequent offer to purchase must first be offered to Eastside pursuant to the Agreement. Thus, when reading the contract as a whole, as we are required to do to interpret it under the rules of construction,[15] it unambiguously provides that Eastside's right of first refusal is renewed only if the property is not sold to the previous third-party

---

[9] (Citation omitted.) *Strozzo v. Sea Island Bank*, 240 Ga. App. 183, 187 (1) (521 SE2d 392) (1999).

[10] (Citation omitted.) *Griffin v. Adams*, 175 Ga. App. 715, 716 (334 SE2d 42) (1985).

[11] *Strozzo*, supra.

[12] OCGA § 13-2-2 (2).

[13] *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996).

[14] See OCGA § 13-2-2 (9).

[15] OCGA § 13-2-2 (4); *Holloway Constr. Co. v. Dept. of Transp.*, 218 Ga. App. 243, 245 (2) (461 SE2d 257) (1995).

offeror. Accordingly, we find that the contract provided Sims the right to close the transaction in accordance with the terms of the third-party offer.[16]

2. Based upon our decision in Division 1, we need not consider appellant's remaining enumeration of error.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MARCH 28, 2001.

*Holland & Knight, Gregory J. Digel, Rachel C. Boring, Laurie W. Daniel,* for appellant.

*Russell, Stell, Smith & McLocklin, John E. Stell, Jr., Andersen, Davidson & Tate, Gerald Davidson, Jr., Christopher R. Stovall,* for appellee.

---

[16] Compare *Radio Webs v. Tele-Media Corp.*, 249 Ga. 598, n. 2 (292 SE2d 712) (1982) (the offer of the third party supplies the terms under which the right of first refusal may be exercised).