A01A2306. GHERTNER et al. v. SOLAIMANI.
(563 SE2d 878)

ANDREWS, Presiding Judge.

Pursuant to the grant of an interlocutory appeal, we consider whether the trial court erred in concluding that a "Bet Din," a three-member board consisting of three rabbis, did not comply with the Georgia Arbitration Code[1] and, therefore, the decision rendered by the Bet Din was not a bar to Kourosh Solaimani's civil suit seeking

---

[1] OCGA § 9-9-1 et seq.

an equitable accounting and injunctive relief as well as damages for fraud and conversion. We further consider whether the trial court erred in concluding that Solaimani did not waive any such failure to comply with the Code.

While a number of facts were disputed below, the following were not. Solaimani was a caricaturist who became involved with Simon Ghertner as his agent. Mrs. Ghertner, also named as a defendant, assisted Mr. Ghertner with accounting matters. All of the parties are Jewish. While Mr. and Mrs. Ghertner are orthodox, Solaimani is not. Solaimani was interested in expanding his business to include bar mitzvah and bat mitzvah celebrations. In 1987, Solaimani placed an ad in the Jewish Times, listing Simon Ghertner's telephone number and his own business name, Creative Caricatures. The two men were to share the cost of advertising, and Ghertner was to act as Solaimani's booking agent, taking 20 percent of the fees generated.

This arrangement continued until 1992 when Solaimani became dissatisfied with the arrangement, feeling that he had been taken advantage of by Ghertner. Solaimani contacted attorney Mize on July 28, 1992, inquiring about help with the problem. Then, Solaimani spoke with Rabbi Khoskerman concerning the dispute and was told that, according to Jewish law, one Jew did not take another Jew to civil court, but such disputes were to be settled by a Bet Din. Pursuant to this conversation, Rabbi Khoskerman contacted two other rabbis, Rabbi Deutsch and Rabbi Broyde, in order to commence a Bet Din. Rabbi Broyde, a member of the New York Bar although not a member of the Georgia Bar, is an attorney and law school professor. The other two rabbis had rabbinical credentials but no legal background.

On July 29, 1992, Simon Ghertner and Solaimani met with the three rabbis and an Agreement to Arbitrate was signed by the parties. The parties' signatures were witnessed by two witnesses not further involved in the proceedings.

The arbitration agreement stated that a dispute existed between the parties regarding Creative Caricatures and Caricatures Ink "and any related transactions or deals, with each party claiming financial and other claims against the other." It further provided, in pertinent part, that:

> For the purposes of satisfactorily adjusting said differences and disputes, it has been agreed by the said parties that the matters in dispute between them . . . be submitted to an arbitration panel consisting of [the three rabbis]. Said parties agree that they have selected the aforesaid arbitrators to resolve their disputes. The parties acknowledge that these arbitrators may resolve this controversy in accordance

with Jewish law ("din") or through court ordered settlement in accordance with Jewish law ("p'shara krova l'din"). . . . The parties agree that the judgment may be entered on the award in any court of competent jurisdiction in the State of Georgia, and that such agreement shall be final as to the parties and issues encompassed in this agreement.

A letter of July 28, 1992, had been written by attorney Mize to Ghertner on behalf of Solaimani, according to Solaimani's testimony. That letter was not tendered in the trial court and is not part of the record. There is, however, a copy of Mize's letter to Ghertner of August 5, 1992, following the signing of the Agreement to Arbitrate, that states, in pertinent part, that:

On July 28, 1992[,] I wrote you concerning the dispute existing between you and Mr. Kourosh Solaimani. *It is my understanding that you and Mr. Solaimani have now presented your financial disputes to binding arbitration.* As a result of the arbitration, it will not be necessary for you to provide me with the accounting I requested in my letter nor will it be necessary for you to provide me with information concerning any commissions which you claim are due you. *I presume all of those issues would be resolved by the arbitration.*

(Emphasis supplied.)

On February 24, 1993, after numerous meetings with the parties and review of documentation presented to them by both parties, the panel issued a "partial award," following which Solaimani continued to present documentary evidence to the Bet Din. On July 16, 1993, the panel issued its "final award," pursuant to which Ghertner was ordered to pay Solaimani $1,900. The award further sorted out the business relationship between Ghertner and Solaimani regarding use of the two business names and other issues. Pursuant to that award, Ghertner delivered to Rabbi Deutsch 12 post-dated checks to be delivered monthly to Solaimani representing the total monetary award to Solaimani.

The present action was filed on July 29, 1994. In response to that complaint, the Ghertners asserted the affirmative defense of "arbitration and award," OCGA § 9-11-8 (c). The Ghertners' motion to dismiss or, in the alternative, for summary judgment on this issue was denied by the trial court in 1998. The trial court then conducted an evidentiary hearing regarding the Bet Din and issued the order here appealed.

As correctly concluded by the trial court, the results of a Bet Din,

conducted pursuant to the Georgia Arbitration Code, are enforceable pursuant to the Code. This conclusion is supported by decisions of courts of sister states which have considered the specific issue of a Bet Din. See, e.g., *In re Marriage of Popack*, 998 P2d 464 (Colo. App. 2000); *Kovacs v. Kovacs*, 98 Md. App. 289 (633 A2d 425) (1993).

Having acknowledged this, the trial court then concluded that the Bet Din did not comport with that Code "in that the arbitrators did not maintain a record of all pleadings, documents, testimony, and other matters" as required by OCGA § 9-9-8 (e). The trial court also concluded, without further elucidation, that Solaimani "did not knowingly waive the requirement that the arbitrators maintain such records."

Rabbi Broyde, the administrative head of the Bet Din, testified that, during the Bet Din, he and the other rabbis took notes. After the issuing of the final award, however, those notes were disposed of. We need not consider whether, in the context of this case, such notes satisfy the requirement of OCGA § 9-9-8 (e) for record keeping because the record here reflects a waiver of that right as a matter of law.

At issue are the following provisions of the Georgia Arbitration Code, OCGA §§ 9-9-8 (e) and (f), 9-9-12, and 9-9-13 (b).

OCGA § 9-9-8 (e) and (f) provide that:

> (e) The arbitrators shall maintain a record of all pleadings, documents, testimony, and other matters introduced at the hearing. The arbitrators or any party to the proceeding may have the proceedings transcribed by a court reporter. (f) Except as provided in subsection (c)[2] . . . , a requirement of this Code section may be waived by written consent of the parties or *by continuing with the arbitration without objection.*

(Emphasis supplied.)

OCGA § 9-9-12 provides that the court "shall confirm an award upon application of a party *made within one year after its delivery to him,* unless the award is vacated or modified by the court as provided in this part." Pursuant to OCGA § 9-9-13 (a), any application to vacate an award "shall be made to the court *within three months* after delivery of a copy of the award. . . ." (Emphasis supplied.)

Subsection (b) provides that, when a party has participated in an arbitration, four grounds, and four grounds only,[3] can serve as a basis for vacating an award.

---

[2] Subsection (c), dealing with the right to an attorney, was not addressed by the trial court, and we do not further consider it here.

[3] *Greene v. Hundley*, 266 Ga. 592, 595 (1) (468 SE2d 350) (1996).

Here, it is not disputed that Solaimani did not avail himself of the opportunity to have the award vacated for "failure to follow the procedure of this part," the fourth ground of OCGA § 9-9-13 (b).

When Ghertner asserted the affirmative defense of arbitration and award and put forth proof of that defense, Solaimani attempted to do what he had not done pursuant to OCGA § 9-9-13 (b). At this point, there was no legal basis upon which to contest the arbitration, since he acknowledged signing the agreement and participating in the Bet Din.[4] Additionally, even had he timely attempted to vacate the award, the burden was on him to prove that he had not waived his right to insist on strict compliance with the Code and that he was prejudiced by that failure to comply. *Greene v. Hundley*, 266 Ga. 592, 595 (1) (468 SE2d 350) (1996); *Bennett v. Builders II, Inc.*, 237 Ga. App. 756, 757 (3) (516 SE2d 808) (1999). The only proof of prejudice put forward by Solaimani in the hearing conducted here was that he was not awarded enough money for commissions, and that is insufficient to show the required prejudice. See *Conmac Corp. v. Southern Diversified Dev.*, 245 Ga. App. 895, 898 (1) (539 SE2d 532) (2000); *Bennett*, supra.

Such a conclusion is consistent with the "clear public policy in favor of arbitration" reflected in the General Assembly's adoption of the Arbitration Code. *Haynes v. Fincher*, 241 Ga. App. 179, 181 (4) (525 SE2d 405) (1999). In *Haynes*, the Hayneses participated in the arbitration which they initiated and obtained an award which they did not challenge under the provisions of the Arbitration Code and were, therefore, bound by it. Id. at 180 (1).

Also, parties are presumed to know the law. *City of Atlanta v. Black*, 265 Ga. 425, 426 (457 SE2d 551) (1995); *Walston & Assoc. v. City of Atlanta*, 224 Ga. App. 482, 483 (1) (480 SE2d 917) (1997). No request by Solaimani was ever made of the rabbis that additional records be kept, nor did he avail himself of his right to have the proceedings transcribed. In fact, the issue of record keeping was first mentioned by the trial court below, not by Solaimani or his counsel.

Therefore, the trial court erred in finding that Solaimani did not waive his rights to additional record keeping by continuing with the Bet Din.

*Judgment reversed. Eldridge and Miller, JJ., concur.*

---

[4] Where the facts necessary to establish an affirmative defense are admitted or not controverted, the court may dispose of the matter upon a motion to dismiss, motion for judgment on the pleadings, or motion for summary judgment. *Ezzard v. Morgan*, 118 Ga. App. 50, 51 (1) (162 SE2d 793) (1968).

DECIDED MARCH 25, 2002 —
RECONSIDERATION DENIED APRIL 10, 2002 —

*Garland, Samuel & Loeb, Donald F. Samuel*, for appellants.
*Sarah M. Wayman, John C. Whatley VI*, for appellee.