A03A1593. JOJA PARTNERS, LLC v. ABRAMS PROPERTIES, INC.
(585 SE2d 168)

ELDRIDGE, Judge.

We granted defendant-appellant jOjA Partners, LLC's ("jOjA") application for discretionary appeal to consider whether the Cobb County Superior Court erred in denying jOjA's motion to compel arbitration and motion for immediate stay in the underlying action. Therein, plaintiff-appellee Abrams Properties, Inc. seeks a declaratory judgment, damages, and OCGA § 13-6-11 attorney fees against jOjA, averring breach of contract, breach of fiduciary duties, and conversion. On appeal, jOjA contends that the superior court erred in finding: the Asset Management Agreement ("Agreement") in issue showed that the parties intended arbitration to serve as an optional rather than exclusive remedy for disputes arising under the Agreement; the termination of the Agreement before electing arbitration vitiated any requirement to arbitrate; no duty to arbitrate obtained because the parties failed to initial the arbitration provisions of the Agreement under OCGA § 9-9-2 (c); and the right to compel arbitration was waived for jOjA's failure to "diligently and in good faith attempt to resolve" the dispute of the parties before electing to serve its arbitration demand. Because the findings of the superior court are in error, we reverse.

On December 22, 2000, jOjA and Abrams entered into the Agreement by which jOjA was engaged as an independent contractor to provide certain services relating to the administration, management, supervision, leasing, and disposition of Abrams' real estate assets. Evidence of a dispute between the parties arose on August 12, 2002,

when by letter to Abrams, subject: Notice of Failure to Perform Under Asset Management Agreement, jOjA notified Abrams that it was in breach of the Agreement for failure to pay the full commission owing upon its sale of a Florida shopping center on Abrams' behalf. The letter gave Abrams ten days to cure. On August 16, 2002, Abrams sent jOjA its "Notice of Failure to Perform Duties and Obligations Under the Contract" by letter, contending that jOjA had breached seven of its duties under the Agreement. On August 22, 2002, Abrams further wrote jOjA in response to its August 12, 2002 letter, denying any breach of the Agreement and demanding withdrawal of "improper notice and demand for payment." The following day, jOjA notified Abrams of its termination of the Agreement and election to pursue arbitration in the event the parties cannot "amicably resolve this dispute within thirty (30) days, i.e. on or before September 22, 2002." On September 20, 2002, Abrams terminated the Agreement and filed the instant action in the trial court. Five days later, jOjA filed its motion to compel arbitration and motion for stay. On October 16, 2002, jOjA timely answered denying the material allegations of Abrams' complaint and counterclaimed seeking damages, punitive damages, and OCGA § 13-6-11 attorney fees, averring breach of the Agreement from its perspective as well as tortious interference with business/contractual relations. *Held*:

1. The superior court erred in concluding that the permissive use of the word "may" rather than the obligatory word "shall" in Article 12 of the Agreement made arbitration an optional remedy under the Agreement.

Pertinently, in the event of default by asset manager jOjA or by owner Abrams, Sections 12.2 and 12.4 of Article 12 of the Agreement provide that the "[injured party] *may pursue* any *one or more of the following remedies*, separately or concurrently or in any combination, without further notice or demand whatsoever." Id.

> Section 12.2.1 [and Section 12.4.1 The injured party] *may terminate this Agreement* by giving notice of such termination, in which event this Agreement shall be terminated at the time designated by [the injured party] in its notice of termination to [the defaulting party].
>
> Section 12.2.2 [and Section 12.4.2] With or without terminating this Agreement, [the injured party] *may pursue arbitration against [the defaulting party] in accordance with Section 15.16* to recover from [defaulting party] all damages suffered, incurred or sustained by [injured party] as a result of, by reason of or in connection with such default.

(Emphasis supplied.) Sections 12.2.1 and 12.4.1, and Sections 12.2.2 and 12.4.2, Article 12, Agreement, respectively.

Section 15.16 of the Agreement, in turn, provides

> *Arbitration.* Owner [Abrams] and [Asset Manager] jOjA agree to diligently and in good faith attempt to resolve any dispute hereunder. In the event the parties cannot amicably resolve a dispute within thirty (30) days, the parties agree to submit the dispute to arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

We, of course, recognize that the Georgia Arbitration Code "is in derogation of common law and must be strictly construed and not extended beyond its plain terms." *Pinnacle Constr. Co. v. Osborne*, 218 Ga. App. 366, 367 (3) (460 SE2d 880) (1995). Nonetheless, " '[we, as here,] are required to uphold valid arbitration provisions in contracts.' [Cit.]" *Saturna v. Bickley Constr. Co.*, 252 Ga. App. 140, 142 (555 SE2d 825) (2001). "Where the language of the contract is plain, unambiguous, and capable of only one reasonable interpretation, construction of the contract is not permitted, and the language of the contract is given effect. *R. S. Helms, Inc. v. GST Dev. Co.*, 135 Ga. App. 845, 848 (219 SE2d 458) (1975)." *Strozzo v. Sea Island Bank*, 240 Ga. App. 183, 187 (1) (521 SE2d 392) (1999). Moreover, "the language used is given its literal meaning, and plain ordinary words are given their usual significance. *Wheeler v. Jones County*, 101 Ga. App. 234, 236 (113 SE2d 238) (1960)." *Griffin v. Adams*, 175 Ga. App. 715, 716 (334 SE2d 42) (1985).

So construing the use of the word "may" versus the word "shall" in the instant circumstances, the superior court correctly concluded that "may" meant that the parties intended that they should have a choice as to remedies for disputes arising under the Agreement. See Black's Law Dictionary (6th ed.), p. 979 ("In construction of statutes and presumably also in construction of federal rules word 'may' as opposed to 'shall' is indicative of discretion or choice between two or more alternatives, but context in which word appears must be controlling factor. [Cit.]"). However, the superior court erred insofar as the choice provided the parties under the Agreement was not one allowing them to litigate or arbitrate; rather, the choice provided was one which allowed them to terminate for default upon notice *or* to arbitrate after making a good faith, 30-day effort to amicably resolve any disputes arising under the Agreement between themselves pursuant to Section 15.16 thereof. Arbitration as mandatory under the Agreement in the absence of electing the termination option, the superior court erred in staying arbitration and in refusing to compel Abrams to submit to an arbitration of the claims of the parties.

2. Neither did termination of the Agreement render its arbitration provisions unenforceable. Sections 12.2.2 and 12.4.2 of the Agreement plainly provide that in the event of default by either party, the injured party may pursue arbitration "with or without terminating the Agreement." Division 1, supra. Moreover the foregoing sections of the Agreement provide that the available remedies — termination or arbitration — may be pursued "separately or concurrently or in any combination." Sections 12.2.2 and 12.4.2, Article 12, Agreement. This language is plain, unambiguous, and capable of only one reasonable interpretation. As such, it must be given its literal effect, the finding of the superior court to the contrary notwithstanding. *Eastside Gardens of Snellville v. Sims*, 248 Ga. App. 797, 800 (1) (547 SE2d 383) (2001).

3. Further, jOjA challenges the finding of the superior court barring arbitration for the failure of the parties to initial the arbitration provisions of the Agreement under OCGA § 9-9-2 (c) (9). While the superior court correctly indicates that OCGA § 9-9-2 (c) (9)[1] makes the Arbitration Code inapplicable to arbitration provisions not initialed by parties to contracts as to terms and conditions of employment, the Agreement, by its own terms, is not an employment contract. Pertinently, Section 2.2 of the Agreement, denominated "Status of the Asset Manager," provides that "in the performance of all its duties and obligations under [the] Agreement, [jOjA] is, and shall at all times during the Term be, an independent contractor, and not an employee of [Abrams]."

"Where the contract of employment clearly denominates the other party as an independent contractor, that relationship is presumed to be true unless the evidence shows that the employer assumed such control." (Citations and punctuation omitted.) *Teachers' Retirement System &c. v. Forehand*, 234 Ga. App. 437, 441 (506 SE2d 913) (1998). And to interpret "terms and conditions of employment" as used in OCGA § 9-9-2 (c) (9) broadly to include independent contractor relationships as well as employer-employee relationships would violate our duty of strict construction relative to the Georgia Arbitration Code. *Pinnacle Constr. Co. v. Osborne*, supra. In this regard, the superior court's reliance on our decision in *Columbus Anesthesia Group v. Kutzner*, 218 Ga. App. 51 (459 SE2d 422) (1995), for the broader view is misplaced. Therein, while recognizing that the agreement in issue established Dr. Kutzner's ownership interest in the Columbus Anesthesia Group, we decided the case based on the agreement insofar as it reflected the nature of the employer-

---

[1] The Georgia Arbitration Code shall not apply to "[a]ny contract relating to terms and conditions of employment unless the clause agreeing to arbitrate is initialed by all signatories at the time of the execution of the agreement." OCGA § 9-9-2 (c) (9).

employee relationship involved. Id. at 54 (2). Consequently, the superior court erred in refusing to authorize arbitration for the failure of the parties to initial the arbitration provisions of the Agreement under OCGA § 9-9-2 (c) (9).

4. jOjA last claims that the superior court erred in finding waiver of any right to compel arbitration for failure to diligently and in good faith attempt to resolve the dispute of the parties under Section 15.16 of the Agreement prior to serving its arbitration demand. " 'An agreement to arbitrate is waived by any action of a party which is inconsistent with the right of arbitration.' [Cit.]" *St. Paul Fire &c. Ins. Co. v. Barge*, 225 Ga. App. 392, 393 (1) (483 SE2d 883) (1997).

> However, in those cases where a waiver was held to have occurred, the party seeking to rely upon an arbitration clause did not promptly invoke or seek to enforce the clause. See, e.g., *Tillman* [*Group v. Keith*, 201 Ga. App. 680, 681 (2) (411 SE2d 794) (1991)] (appellant litigated claim to judgment without ever moving to compel arbitration or to stay proceedings pending arbitration); *Nat. Parents' Resource &c. v. Peachtree Hotel Co.*, 201 Ga. App. 637, 638 (2) (411 SE2d 884) (1991) (appellant defended on the merits and litigated case without moving to compel or to stay proceedings).

*Weyant v. MacIntyre*, 211 Ga. App. 281, 283 (3) (438 SE2d 640) (1993).

The record shows that by its letter to Abrams of August 12, 2002, jOjA gave Abrams notice of breach under the Agreement. On August 23, 2002, jOjA notified Abrams of its termination of the Agreement and election to pursue arbitration under the Agreement. And, on September 25, 2002, jOjA filed its motion to compel arbitration and motion for immediate stay, this despite the fact that Abrams had filed its lawsuit and given notice of its termination of the Agreement five days earlier. Manifestly, these actions are not inconsistent with the right of arbitration. Accordingly, the superior court erred in finding waiver of arbitration for failure in jOjA to attempt to resolve the dispute prior to initiating arbitration.

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JULY 8, 2003 — ▆▆▆▆▆▆

*Alston & Bird, T. Michael Tennant, Daniel N. Esrey*, for appellant.

*Holt, Ney, Zatcoff & Wasserman, Joseph S. Jacobson, Jay F. Castle, Ellen W. Smith*, for appellee.