**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 15, 2019**

# In the Court of Appeals of Georgia

A19A0258, A19A0321. SUMMERVILLE et al. v. INNOVATIVE IMAGES, LLC; and vice versa.

BARNES, Presiding Judge.

Innovative Images, LLC ("Innovative") sued James Darren Summerville, Summerville Moore, P. C., and the Summerville Firm, LLC (collectively, "the Summerville Defendants") for legal malpractice. The Summerville Defendants acknowledged service of the summons and the complaint but did not file a timely answer. The trial court subsequently granted the Summerville Defendants' motion to open default but denied their motion to compel arbitration on the ground that the arbitration clause contained in the parties' attorney-client contract was unconscionable. The trial court issued a certificate of immediate review from its order denying the motion to compel arbitration, and the Summerville Defendants filed an

application for interlocutory appeal. This Court granted the application, leading to the Summerville Defendants' appeal of the trial court's order denying their motion to compel arbitration in Case No. A19A0258. In Case No. A19A0321, Innovative cross-appeals from the trial court's order granting the Summerville Defendants' motion to open the default. For the reasons discussed below, we reverse the trial court's order denying the Summerville Defendants' motion to compel arbitration, and we affirm the trial court's order granting their motion to open the default.

*Case No. A19A0258*

1. The Summerville Defendants contend that the trial court erred in denying their motion to compel arbitration.

Under the Georgia Arbitration Code ("GAC"), OCGA § 9-9-1 et seq., "a party may seek an order compelling arbitration, and upon a challenge to the validity of the agreement, the trial court 'shall summarily hear and determine that issue and, accordingly, grant or deny the application for an order to arbitrate.'"*Kindred Nursing Centers v. Chrzanowski*, 338 Ga. App. 708, 713 (1) (791 SE2d 601) (2016), quoting OCGA § 9-9-6 (a). Whether the contracting parties have submitted a particular dispute to arbitration and the validity of the arbitration provision are questions for judicial determination unless the parties clearly and unmistakably provided otherwise

2

in their contract. *Salinas v. Atlanta Gas Light Co.*, 347 Ga. App. 480, 482 (1) (819 SE2d 903) (2018); *Harris v. Albany Lime & Cement Co.*, 291 Ga. App. 474, 475 (1) (662 SE2d 160) (2008).

Guided by these principles, we turn to the factual and procedural background pertinent to the main appeal in this case. In July 2013, Innovative retained Mr. Summerville and his law firm to represent it in post-trial proceedings following an adverse civil judgment, and the parties executed an attorney-client engagement agreement that set out the terms of the representation (the "Engagement Agreement"). A section of the Engagement Agreement entitled "Other Important Terms" included a choice-of-law clause stating that the "agreement and its performance are governed by the laws of the State of Georgia." That section of the Engagement Agreement also included an arbitration clause (the "Arbitration Clause" or the "Clause") stating:

> Any dispute arising under this agreement will be submitted to arbitration
> in Atlanta, Georgia under the rules and procedures of the State Bar of
> Georgia Committee on the Arbitration of Attorney Fee Disputes, if
> concerning fees, or by an arbitrator to be agreed to by the parties, if
> concerning any other matter. Alternatively, you may choose to arbitrate
> any dispute arising under this agreement in Atlanta by a single arbitrator
> provided through the Atlanta office of Judicial Arbitration and
> Mediation Service ("JAMS"). The decision of any such arbitrator or
> arbitrators shall be binding, conclusive, and not appealable. In the event

a dispute is not or cannot be arbitrated, the parties consent to the jurisdiction of and venue in the courts of Fulton County, Georgia.

In October 2017, Innovative filed the present legal malpractice action in the State Court of Fulton County against the Summerville Defendants for the allegedly negligent post-trial representation of Innovative in the underlying civil suit, asserting claims for breach of professional negligence, breach of contract, and breach of fiduciary duties. During the course of the litigation,[1] the Summerville Defendants filed a motion to stay discovery, compel arbitration, and dismiss the legal malpractice action based on the Arbitration Clause (the "Motion to Compel Arbitration"). Innovative opposed the Motion to Compel Arbitration, contending, among other things, that the Arbitration Clause was unconscionable because the Summerville Defendants had not advised Innovative of the possible disadvantages associated with arbitration.

The trial court denied the Summerville Defendants' Motion to Compel Arbitration, agreeing with Innovative that the Arbitration Clause was unconscionable. The trial court reasoned that although the GAC does not prohibit the arbitration of

---

[1] The trial court's opening of the default that occurred in this case will be discussed *infra* in Division 2.

legal malpractice claims, Rule 1.4 (b) of the Georgia Rules of Professional Conduct (the "State Bar Rules")[2] and American Bar Association ("ABA") Formal Opinion 02-425[3] support imposing a legal requirement on attorneys to explain to their prospective clients the possible disadvantages of binding arbitration clauses contained in attorney-client engagement contracts, such as the waiver of the right to a jury trial, the potential waiver of broad discovery, and the waiver of the right to appeal. And, because there was no evidence in the record that the Summerville Defendants explained the Arbitration Clause to their prospective client, Innovative, before the Engagement Agreement was signed, the trial court found that the Arbitration Clause was unconscionable and thus unenforceable.

---

[2] State Bar Rule 1.4 (b) provides: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Ga. Bar Rules and Regs., Rule 4-102 (d), Rule 1.4 (b).

[3] ABA Formal Opinion 02-425 construes Rule 1.4 (b) of the Model Rules of Professional Conduct to mean that an attorney must fully apprise a prospective client "of the advantages and disadvantages of arbitration" so that he or she can "make an informed decision about whether to agree to the inclusion of the arbitration provision in the retainer agreement." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 02-425 (2002).

(a) The Summerville Defendants contend that the trial court erred in denying their Motion to Compel Arbitration on the ground that the Arbitration Clause was unconscionable. We agree.

"An unconscionable contract is one abhorrent to good morals and conscience. It is one where one of the parties takes a fraudulent advantage of another. It is an agreement that no sane person not acting under a delusion would make and that no honest person would take advantage of." (Citations and punctuation omitted.) *William J. Cooney, P.C. v. Rowland*, 240 Ga. App. 703, 704 (524 SE2d 730) (1999). A contract is not unconscionable if permitted by statute. *Avery v. Aladdin Products Div. &c.*, 128 Ga. App. 266, 267 (2) (196 SE2d 357) (1973). See *William J. Cooney, P.C.*, 240 Ga. App. at 704 ("That which the law itself specifically permits cannot be unconscionable."). Moreover, in determining whether a contract is unconscionable, we must bear in mind that "Georgia law recognizes and protects the freedom of parties to contract," *William J. Cooney, P.C.*, 240 Ga. App. at 705, and

> contracts will not be avoided by the courts as against public policy, except where the case is free from doubt and where an injury to the public interest clearly appears. Absent a limiting statute or controlling public policy, parties may contract with one another on whatever terms they wish[,] and the written contract defines the full extent of their rights and duties.

6

(Citations and punctuation omitted.) *Hall v. Fruehauf Corp.*, 179 Ga. App. 362, 362 (346 SE2d 582) (1986).

As to arbitration clauses, "Georgia has . . . enacted the [GAC], evidencing the legislature's conclusion that arbitration is not in violation of the public policy of this State and, therefore, cannot be said, per se, to be unconscionable." *Results Oriented v. Crawford*, 245 Ga. App. 432, 437 (1) (a) (538 SE2d 73) (2000), aff'd, *Crawford v. Results Oriented*, 273 Ga. 884 (548 SE2d 342) (2001). See *Order Homes v. Iverson*, 300 Ga. App. 332, 334-335 (1) (685 SE2d 304) (2009) ("In enacting the GAC, the General Assembly established a clear public policy in favor of arbitration.") (punctuation and footnote omitted). Furthermore, an arbitration clause is not unconscionable because the contracting parties have differing levels of sophistication or different understandings of how arbitration is conducted. See *Crawford v. Great American Cash Advance*, 284 Ga. App. 690, 693-694 (1) (c) (644 SE2d 522) (2007). And, when a party signs a contract containing an arbitration clause, the party is presumed to have read and understood the clause. *Holt & Holt v. Choate Constr. Co.*, 271 Ga. App. 292, 294 (1) (609 SE2d 103) (2004). See also *Northwest Plaza v. Northeast Enterprises*, 305 Ga. App. 182, 189-190 (1) (699 SE2d 410) (2010) (where representatives of corporation signed contract, corporation was charged with having

7

read the contract and understood its terms); *Ghertner v. Solaimani*, 254 Ga. App. 821, 825 (563 SE2d 878) (2002) (contracting parties who agree to an arbitration clause are "presumed to know the law" pertaining to arbitration).

In the present case, in addition to the foregoing well-settled principles counseling against a finding of unconscionability, there was no evidence that the Summerville Defendants took advantage of Innovative, fraudulently or otherwise. Nor was there any evidence that Innovative was induced by the Summerville Defendants to forego reading the Engagement Agreement or inquiring into any of its terms, including the Arbitration Clause. Nevertheless, the trial court declined to enforce the Arbitration Clause on the ground of unconscionability based on its conclusion that, as a matter of public policy, lawyers have a duty to explain the possible disadvantages of arbitration clauses to their prospective clients before engagement agreements are executed, and there was no indication in the record that such an explanation had been provided to Innovative.[4] In support of its conclusion

[4] Before determining that the Arbitration Clause was unconscionable based on the lack of explanation given to Innovative, the trial court concluded that arbitration clauses covering legal malpractice disputes are not prohibited by the GAC. Innovative does not dispute that conclusion on appeal. Compare OCGA § 9-9-2 (c) (1) (excluding the arbitration of medical malpractice claims from the GAC's enforcement procedures).

8

that public policy had been violated, the trial court relied on the duty of communication imposed on attorneys by State Bar Rule 1.4 (b) and the interpretation of Model Rule 1.4 (b) found in ABA Formal Opinion 02-425, reasoning that both were "relevant and persuasive in deciding whether [the Arbitration Clause was] an unconscionable imposition in a fiduciary relationship."[5]

It is true that "contractual provisions between attorneys and clients which violate the public interest are unenforceable," *Nelson & Hill v. Wood*, 245 Ga. App. 60, 66 (2) (537 SE2d 670) (2000), and that public policy may be informed by the

---

[5] Separately, State Bar Rule 1.8 (h) provides:

> A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

The trial court concluded that State Bar Rule 1.8 (h) was not implicated in this case because the Arbitration Clause did not limit Innovative's recovery otherwise available under the law for a legal malpractice claim. We agree with the trial court's conclusion in this regard. See generally *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (II) (105 SCt 3346, 87 LE2d 444) (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."); *Crawford*, 284 Ga. App. at 694 (1) (d) (concluding that arbitration agreement was not unconscionable, where, among other things, the agreement's terms did not "prevent the arbitrator from awarding [the plaintiff] the full panoply of relief available under law").

State Bar Rules. See, e.g., *Eichholz Law Firm v. Tate Law Group*, 310 Ga. App. 848, 851-853 (1) (714 SE2d 413) (2011) (fee-splitting provision of joint venture agreement, which permitted law firm to receive portion of contingency fee where firm's representation had been terminated by client before fee was earned, violated State Bar Rule 1.5 (e) (2) and was unenforceable on public policy grounds); *Harris v. Albany Lime & Cement Co.*, 291 Ga. App. 474, 475-477 (1) (662 SE2d 160) (2008) (arbitration clause entered into between attorney and existing client was voidable at the option of the client on public policy grounds, where the attorney had an "egregious conflict of interest" in violation of State Bar Rule 1.8 (a); while the attorney was representing the client in a pending defective construction lawsuit in which the attorney also was named as a defendant, the attorney had persuaded the client to execute an agreement with him and his businesses pertaining to the renovation of the house in question that contained an arbitration clause). Notably, however, "[t]he fact that this case involves an attorney-client relationship does not mean that the rules of professional conduct preempt statutory law and case law regarding contracts." *William J. Cooney, P.C.*, 240 Ga. App. at 705.

Given our legislature's strong public policy preference in favor of arbitration as expressed in the GAC, and in light of our aforementioned case law regarding

arbitration clauses and unconscionability, we decline to adopt a blanket rule that an arbitration clause in an attorney-client contract is unconscionable and against public policy if the attorney did not explain the potential disadvantages of the clause to his prospective client before execution of the contract. In reaching this conclusion, we are mindful that "the legislature is empowered by the Constitution to decide public policy, and to implement that policy by enacting laws[,] . . . [and] the power of the courts to declare a contract provision void for being in contravention of a sound public policy is a very delicate and undefined power" that should be exercised cautiously. (Citations and punctuation omitted.) *Jones v. Federated Mut. Ins. Co.*, 346 Ga. App. 237, 243 (2) (b) (816 SE2d 105) (2018). Furthermore, the Supreme Court of Georgia has the "inherent and exclusive authority to govern the practice of law in Georgia," *Nodvin v. State Bar of Ga.*, 273 Ga. 559, 559 (1) (544 SE2d 142) (2001), and the Supreme Court has not addressed whether ABA Formal Opinion 02-425 should be adopted as the proper interpretation of State Bar Rule 1.4 (b). Accordingly, for these combined reasons, we conclude that the trial court erred in finding the

11

Arbitration Clause unconscionable and in denying the Summerville Defendants'

Motion to Compel Arbitration.[6]

---

[6] Courts in other jurisdictions have reached differing results with respect to whether attorneys must explain arbitration clauses in engagement agreements to their clients for the clauses to be enforceable. For example, compare *Watts v. Polaczyk*, 619 NW2d 714, 717 (Mich. Ct. App. 2000) (rejecting argument that because attorney-defendants "failed to advise [plaintiff] that the fee agreement contained an arbitration clause, it is invalid"; court noted that "Michigan law presumes that one who signs a written agreement knows the nature of the instrument so executed and understands its contents"); *Royston, Rayzor, Vickery & Williams v. Lopez*, 467 SW3d 494, 504-505 (Tex. 2015) ("[W]e decline to impose, as a matter of public policy, a legal requirement that attorneys explain to prospective clients, either orally or in writing, arbitration provisions in attorney-client employment agreements. Prospective clients who enter such contracts are legally protected to the same extent as other contracting parties from, for example, fraud, misrepresentation, or deceit in the contracting process. But prospective clients who sign attorney-client employment contracts containing arbitration provisions are deemed to know and understand the contracts' content and are bound by their terms on the same basis as are other contracting parties.") (citations omitted); with *Hodges v. Reasonover*, 103 So3d 1069, 1078 (La. 2012) (concluding that for an arbitration clause in an attorney-client agreement to be enforceable, "an attorney must make full and complete disclosure of the potential effects of an arbitration clause, including the waiver of a jury trial, the waiver of the right to appeal, the waiver of broad discovery rights, and the possible high upfront costs of arbitration. The contract must explicitly list the types of disputes covered by the arbitration clause, e.g., legal malpractice, and make clear that the client retains the right to lodge a disciplinary complaint."); *Castillo v. Arrieta*, 368 P3d 1249, 1257 (N.M. Ct. App. 2016) (for an arbitration clause in an attorney-client agreement to be enforceable, "the attorney should inform his client that arbitration will constitute a waiver of important rights, including, the right to a jury trial, potentially the right to broad discovery, and the right to an appeal on the merits").

(b) Innovative contends that the trial court's denial of the Summerville Defendants' Motion to Compel Arbitration should be affirmed on the alternative ground that the Arbitration Clause was discretionary rather than mandatory with respect to any dispute other than over attorney fees. See generally *Estate of Nixon v. Barber*, 340 Ga. App. 103, 105 (1) (796 SE2d 489) (2017) (trial court will be affirmed if "right for any reason"); *Reese Realty Co. v. Pal Realty Co.*, 182 Ga. App. 215, 217 (2) (355 SE2d 125) (1987) ("[A] judgment which is correct will not be reversed merely because the wrong reason is given for granting it."). According to Innovative, the Arbitration Clause gave it the option to arbitrate any non-fee disputes arising under the Engagement Agreement but did not compel such arbitration. We are unpersuaded.

"The construction of an arbitration clause in a contract is subject to the ordinary rules of contract construction," and "[t]he cardinal rule of contract construction is to ascertain the intention of the parties." (Citations and punctuation omitted.) *South Point Retail Partners v. North American Properties Atlanta*, 304 Ga. App. 419, 421 (1) (696 SE2d 136) (2010). "It is well settled that when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent." (Citation and punctuation omitted.) *Shelnutt v. Mayor &*

13

*Aldermen of the City of Savannah*, 333 Ga. App. 446, 452 (3) (776 SE2d 650) (2015). Hence, "[w]here the language of the contract is plain, unambiguous, and capable of only one reasonable interpretation, construction of the contract is not permitted, and the language of the contract is given effect." (Citations and punctuation omitted). *Joja Partners v. Abrams Properties*, 262 Ga. App. 209, 211 (1) (585 SE2d 168) (2003). That is the situation here.

The Arbitration Clause in the Engagement Agreement stated that "[a]ny dispute arising under this agreement will be submitted to arbitration." For non-fee disputes arising under the Engagement Agreement, the Arbitration Clause further stated that the arbitration would be conducted "by an arbitrator to be agreed to by the parties," or "[a]lternatively, . . . by a single arbitrator provided through the Atlanta office of Judicial Arbitration and Mediation Service ('JAMS')" chosen by Innovative. Taken together, these provisions plainly and unambiguously gave Innovative two choices over how to select an arbitrator for non-fee disputes arising under the Engagement Agreement, but not the option to disregard the Arbitration Clause altogether and proceed with litigation. See *Joja Partners*, 262 Ga. App. at 211 (1) (arbitration provision gave party some choice among alternatives, but not the option to litigate).

See also *Shelnutt*, 333 Ga. App. at 453 (3) (treating the word "will" as mandatory language).

It is true that the Arbitration Clause further provided that "[i]n the event a dispute is not or cannot be arbitrated, the parties consent to the jurisdiction of and venue in the courts of Fulton County, Georgia." But that venue provision, when read in pari materia with the other language of the Arbitration Clause, would apply only in the limited circumstances where both contracting parties chose to waive arbitration or the arbitration clause was deemed unenforceable by a court. Any other construction would render meaningless the mandatory language that "[a]ny dispute arising under the agreement *will* be submitted to arbitration," a result that clearly must be avoided. (Emphasis supplied.) See *Paul v. Paul*, 235 Ga. 382, 384 (219 SE2d 736) (1975) ("[T]hat construction will be favored which gives meaning and effect to all of the terms of the contract over that which nullifies and renders meaningless a part of the language therein contained[.]") (citation and punctuation omitted).

Contrary to Innovative's argument, the Arbitration Clause was mandatory based on its clear and unambiguous language. Consequently, the trial court's denial

15

of the Summerville Defendants' Motion to Compel Arbitration cannot be affirmed on the alternative ground that the Arbitration Clause was optional.[7]

*Case No. A19A0321*

2. In its cross-appeal, Innovative contends that the trial court erred in granting the Summerville Defendants' motion to open default.

As previously noted, in October 2017, Innovative filed the present legal malpractice action against the Summerville Defendants. After counsel for the parties discussed waiver of service of the summons and complaint, the Summerville Defendants, through their counsel, executed an "Acknowledgment of Service" on October 26, 2017, which stated:

> Defendants, James Darren Summerville, Summerville Moore, P.C., and The Summerville Firm, LLC, do hereby acknowledge service and receipt of the Summons, Complaint for Legal Malpractice, and Affidavit . . . in the above-captioned action, and do hereby waive any and all further service and issuance of process of same.

The Acknowledgment of Service was filed with the trial court the next day.

---

[7] Innovative also argues that the trial court's denial of the Motion to Compel Arbitration should be affirmed on the alternative ground that the Summerville Defendants were estopped from raising an arbitration defense because of their default in the lawsuit. Innovative's argument fails for the reasons discussed infra in Division 2.

16

On November 9, 2017, Innovative served the Summerville Defendants with a request for production of documents and interrogatories. The parties filed a stipulation in which Innovative agreed to an extension for the Summerville Defendants to respond to the discovery requests through January 5, 2018.

On December 14, 2017, Innovative filed a motion for entry of default judgment against the Summerville Defendants. Innovative argued that the case was in automatic default pursuant to OCGA § 9-11-55 (a)[8] because the 30-day statutory period[9] for

[8] OCGA § 9-11-55 (a) provides:
If in any case an answer has not been filed within the time required by this chapter, the case shall automatically become in default unless the time for filing the answer has been extended as provided by law. The default may be opened as a matter of right by the filing of such defenses within 15 days of the day of default, upon the payment of costs. If the case is still in default after the expiration of the period of 15 days, the plaintiff at any time thereafter shall be entitled to verdict and judgment by default, in open court or in chambers, as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a jury, unless the action is one ex delicto or involves unliquidated damages, in which event the plaintiff shall be required to introduce evidence and establish the amount of damages before the court without a jury, with the right of the defendant to introduce evidence as to damages and the right of either to move for a new trial in respect of such damages; provided, however, in the event a defendant, though in default, has placed damages in issue by filing a pleading raising such issue, either party shall be entitled, upon demand, to a jury trial of the issue as to damages. An action based upon open account shall not be considered one for unliquidated damages within the meaning of this Code section.

17

filing an answer had expired and the Summerville Defendants had not yet filed their answer. Innovative also asserted that the Summerville Defendants had failed to move to open the default as a matter of right within 15 days of the automatic default. See id. As a result, Innovative argued that it was entitled to entry of default judgment under OCGA § 9-11-55 (a) and that the Summerville Defendants should be estopped from contesting liability.

The Summerville Defendants opposed Innovative's motion for entry of default judgment, contending that their time for filing an answer had not yet expired because the Acknowledgment of Service extended the time period for responding to the complaint from 30 to 60 days pursuant to OCGA § 9-11-4 (d) (5).[10] Concluding that OCGA § 9-11-4 (d) (5) applied and that the time for filing the answer had not yet

See *BellSouth Telecommunications v. Future Communications*, 293 Ga. App. 247, 248 (666 SE2d 699) (2008) (case automatically in default, where no answer filed within statutory period and time for responding not extended by trial court).

[9] OCGA § 9-11-12 (a) provides in part: "A defendant shall serve his answer within 30 days after the service of the summons and complaint upon him, unless otherwise provided by statute. . . ."

[10] OCGA § 9-11-4 (d) (5) provides in relevant part:
A defendant that, before being served with process, returns a waiver so requested [under this subsection] in a timely manner is not required to serve an answer to the complaint until 60 days after the date on which the request for waiver of service was sent. . . .

18

expired, the trial court denied Innovative's motion for default judgment. The Summerville Defendants thereafter filed their answer within the aforementioned 60-day period and also filed their previously discussed Motion to Compel Arbitration.

Innovative then filed a motion for reconsideration of the trial court's order denying its motion for default judgment, arguing that OCGA § 9-11-4 (d) (5) did not apply and that the case was in automatic default. The Summerville Defendants opposed the motion for reconsideration and also filed a motion to open the default pursuant to OCGA § 9-11-55 (b)[11] in the event that the trial court granted Innovative's motion. In support of their motion to open the default, the Summerville Defendants filed an amended verified answer, a notice of payment of court costs, and affidavits from Mr. Summerville and the Summerville Defendants' counsel.

---

[11] OCGA § 9-11-55 (b) provides:
At any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of required pleadings or for excusable neglect or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms to be fixed by the court. In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and shall announce ready to proceed with the trial.

The Summerville Defendants' counsel averred that she and counsel for Innovative had been involved in prior cases together, and that in those prior cases, her clients had executed acknowledgments of service and had been extended 60 days to file an answer by opposing counsel. Based on that prior practice and her discussions and email communications with opposing counsel, Summerville Defendants' counsel averred that she had understood that her clients would be extended 60 days to file an answer in this case. In addition, the Summerville Defendants' counsel averred that she was in direct communications with opposing counsel during the 30 days after the Acknowledgment of Service was signed and during the 15 day grace period to open default as a matter of right, see OCGA § 9-11-55 (a), and opposing counsel never mentioned any default and consented to an extension of time to respond to the request for production of documents and the interrogatories.

The trial court granted Innovative's motion for reconsideration. The court found that the Acknowledgment of Service executed on behalf of the Summerville Defendants did not meet the statutory requirements for a waiver of service effected under OCGA § 9-11-4 (d) (3)[12] and thus constituted a waiver of service under OCGA

---

[12] OCGA § 9-11-4 (d) (3) provides in relevant part:
(3) To avoid costs, the plaintiff may notify such a defendant of the commencement of the action and request that the defendant waive

20

§ 9-10-73,[13] which prescribes no particular form for a waiver and does not extend the 30-day period for filing an answer. See *SRM Realty Svcs. Group v. Capital Flooring Enterprises*, 274 Ga. App. 595, 599-602 (1) (617 SE2d 581) (2005) (in contrast to waiver of service under OCGA § 9-11-4 (d), waiver of service under OCGA § 9-10-73 does not extend 30-day period for filing answer). Consequently, the trial court

---

service of a summons. The notice and request shall:

(A) Be in writing and shall be addressed directly to the defendant, if an individual, or else to an officer or managing or general agent or other agent authorized by appointment to receive service of process for a defendant subject to service under paragraph (1) or (2) of subsection (e) of this Code section;

(B) Be dispatched through first-class mail or other reliable means;

(C) Be accompanied by a copy of the complaint and shall identify the court in which it has been filed;

(D) Make reference to this Code section and shall inform the defendant, by means of the text prescribed in subsection (l) of this Code section, of the consequences of compliance and of failure to comply with the request;

(E) Set forth the date on which the request is sent;

(F) Allow the defendant a reasonable time to return the waiver, which shall be at least 30 days from the date on which the request is sent, or 60 days from that date if the defendant is addressed outside any judicial district of the United States; and

(G) Provide the defendant with an extra copy of the notice and request, as well as a prepaid means of compliance in writing.

See also OCGA § 9-11-4 (l) (providing forms for effecting waiver of service under subsection (d)).

[13] OCGA § 9-10-73 provides: "The defendant may acknowledge service or waive process by a writing signed by the defendant or someone authorized by him."

21

concluded that the Summerville Defendants had only 30 days to file their answer, which they had failed to do, causing the case to go into automatic default under OCGA § 9-11-55 (a). However, in the same order, the trial court granted the Summerville Defendants' motion to open the default, finding that the statutory conditions for opening default under OCGA § 9-11-55 (b) had been satisfied and that it was a "proper case" for opening the default.

> At the outset, we note that pursuant to OCGA § 9-11-55 (b), a default
>
> [can be] opened on one of three grounds: providential cause, excusable neglect, or a proper case. As a condition precedent to the trial court's consideration of whether any of the three grounds has been met, the defendant must show compliance with four statutory conditions by (1) making a showing under oath, (2) setting up a meritorious defense, (3) offering to plead instanter, and (4) announcing ready to proceed with trial.

(Footnotes omitted.) *Strader v. Palladian Enterprises*, 312 Ga. App. 646, 648 (719 SE2d 541) (2011). "The law favors the opening of defaults because the rule permitting opening of default is remedial in nature and should be liberally applied, for default judgment is a drastic sanction that should be invoked only in extreme situations." (Punctuation and footnote omitted.) *Thomas v. Brown*, 308 Ga. App. 514, 517 (3) (707 SE2d 900) (2011). "For this reason, a default should generally be set

22

aside where the defendant acts with reasonable promptness and alleges a meritorious defense[.]" (Punctuation and footnote omitted.) *Nelson v. Bd. of Regents of the Univ. System of Ga.*, 307 Ga. App. 220, 223 (1) (704 SE2d 868) (2010). On appeal from the grant or denial of a motion to open default, our "sole function as [an] appellate court . . . is to determine whether all the conditions set forth in OCGA § 9-11-55 have been met and, if so, whether the trial court abused its discretion based on the facts peculiar to each case." (Punctuation and footnote omitted.) *Thomas*, 308 Ga. App. at 517 (3).

(a) *The Statutory Preconditions.* Innovative contends that the trial court erred in finding that the Summerville Defendants met the statutory preconditions for opening default because they failed to set up a meritorious defense under oath and to announce ready to proceed with trial. We disagree.

The record belies Innovative's contention that the Summerville Defendants did not set up a meritorious defense to the action under oath. To meet this precondition, a defendant must set forth facts under oath that show the existence of the essential elements of a defense. *Lucas v. Integrated Health Svcs.*, 268 Ga. App. 306, 309-310 (2) (601 SE2d 701) (2004). "This prerequisite does not require a defendant to show that it will completely defeat plaintiff's claim; rather, the defendant must demonstrate that if relief from default is granted, the outcome of the suit may be different from the

23

result if the default stands." (Citations and punctuation omitted.) *Samadi v. Fed. Home Loan Mtg. Corp.*, 344 Ga. App. 111, 116 (1) (a) (809 SE2d 69) (2017). See *Exxon Corp. v. Thomason*, 269 Ga. 761, 761 (1) (504 SE2d 676) (1998). Here, the Summerville Defendants asserted that the case was subject to arbitration in their amended verified answer, and the authenticated Engagement Agreement containing the Arbitration Clause was attached as an exhibit to the sworn affidavit of Mr. Summerville. And, as explained supra in Division 1, the Arbitration Clause was binding and enforceable in this case. Thus, a meritorious defense under oath clearly was asserted by the Summerville Defendants.

Innovative also asserts that the Summerville Defendants did not announce ready for trial and instead "filed a collateral motion seeking to compel arbitration and dismiss the lawsuit." But, the Summerville Defendants expressly stated in their motion to open default that they were ready to proceed with trial, and their amended verified answer specifically stated that "[i]n the absence of the relief prayed for, Defendants *demand a jury of 12* to try the issues when joined." (Emphasis in original.) Hence, the record clearly shows that the Summerville Defendants announced ready for trial, and Innovative cites no statute or case law for its

24

contention that a defendant has not sufficiently announced ready for trial when the defendant raises an arbitration defense.

For these combined reasons, Innovative has failed to show that the trial court committed any error in finding that the Summerville Defendants met the statutory preconditions for opening default under OCGA § 9-11-55 (b). "The trial court therefore was authorized to exercise its discretion and determine whether one of the three grounds for opening default (providential cause, excusable neglect, or proper case) existed." *Samadi*, 344 Ga. App. at 117 (1) (a).

(b) *The "Proper Case" Ground*. Innovative argues that the trial court abused its discretion in finding that the Summerville Defendants had established a "proper case" for opening the default. Again, we disagree.

"[T]he 'proper case' ground, under which the default was opened in this case, has been construed to confer discretion on the trial court broader than that conferred on the other two grounds, as if reaching out to take in every conceivable case where injustice might result if the default were not opened." (Punctuation and footnote omitted.) *Nelson*, 307 Ga. App. at 223 (1). For this ground to apply, the defendant must provide a reasonable explanation for the failure to file a timely answer. *Strader*, 312 Ga. App. at 651. But, where a trial court has entered an order opening default for

25

a "proper case," our review is "exceedingly deferential," and we consider only "whether the trial court's acceptance of [the defendant's] justification as a basis for opening default amounts to a manifest abuse of discretion." (Punctuation and footnote omitted.) Id. Any broader review "would amount to substituting our judgment for that of the trial court, which the applicable standard of review flatly prohibits." Id.

In exercising its discretion to decide whether a default should be opened, the trial court can consider various factors, which alone would not be dispositive, including

> whether and how the opposing party will be prejudiced by opening the default; whether the opposing party elected not to raise the default issue until after the time under OCGA 9-11-55 (a) had expired for the defaulting party to open default as a matter of right; and whether the defaulting party acted promptly to open the default upon learning no answer had been either filed or timely filed.

*Albee v. Krasnoff*, 255 Ga. App. 738, 740 (1) (566 SE2d 455) (2002).

In the present case, there is no indication in the record that the default materially delayed the litigation or resulted in any prejudice to Innovative. Furthermore, Innovative failed to raise any issue with respect to the default until after the Summerville Defendants' time to open the default as a matter of right had expired

26

(see OCGA § 9-11-55 (a)), even though Innovative had already served discovery requests on the Summerville Defendants and agreed to an extension of time for responding to those requests. Additionally, in response to Innovative's motion for reconsideration of the trial court's initial order denying entry of a default judgment, the Summerville Defendants, in an abundance of caution, filed a motion to open default with supporting materials and thus acted promptly to correct any default that had occurred. Lastly, the sworn affidavit of the Summerville Defendants' counsel reflected that the delay in the filing of the answer was caused by a misunderstanding among counsel based on how acknowledgments of service had been handled in prior cases involving the same attorneys, the attorneys' discussions in the present case, and the fact that Innovative had already shown its willingness to grant extensions of time to respond in this case, as shown by its stipulation to an extension of time for responding to the discovery requests.[14]

---

[14] Innovative asserts that the affidavit submitted by the Summerville Defendants' counsel is "false and intentionally misleading" and a "complete fabrication," and Innovative relies on an affidavit submitted by its own counsel to support its contentions regarding the interactions between counsel in this and prior cases. However, a trial court does not abuse its discretion in opening a default unless the evidentiary record *demands* a contrary finding. See *Associated Doctors of Warner Robins v. U.S. FoodService of Atlanta*, 250 Ga. App. 878, 880 (4) (553 SE2d 310) (2001). And, where the order "permitting the opening of a default[ ] is based on conflicting evidence, the discretion vested in the trial court will not be controlled

Under these combined circumstances, we cannot say that the trial court manifestly abused its discretion in concluding that this was a "proper case" for opening default. See *Cheuvront v. Carter*, 263 Ga. App. 837, 838 (589 SE2d 609) (2003) (affirming trial court's setting aside of default judgment where defendant's conversation with plaintiff's counsel led defendant to believe that default judgment would not be pursued by plaintiff); *Albee*, 255 Ga. App. at 741 (1) (trial court did not abuse its discretion in opening default, where, among other things, the plaintiff waited to raise the issue of default until after time for defendant to open the default as a matter of right had expired, even though plaintiff had already served extensive discovery on the defendant and granted the defendant an extension of time for responding to the discovery); *Rose Printing Co. v. EOS Group*, 155 Ga. App. 743, 745 (272 SE2d 585) (1980) (default can be opened based on "understandable misunderstanding between the parties") (citation and punctuation omitted). See also *Berklite v. Bill Heard Chevrolet Co.*, 239 Ga. App. 791, 792-793 (1) (522 SE2d 246) (1999) (holding that a proper case was made for opening default in case where the

unless manifestly abused." (Citation and punctuation omitted.) *Minnesota Mut. Life Ins. Co. v. Love*, 120 Ga. App. 502, 503 (171 SE2d 361) (1969). Here, there was conflicting evidence in the affidavits submitted by counsel for the parties, and the trial court acted within its discretion in crediting the affidavit submitted by the Summerville Defendants' counsel and opening the default.

28

defendant had waived service under OCGA § 9-10-73 but had not filed an answer within 30 days).

*Judgment affirmed in Case No. A19A0321. Judgment reversed in Case No. A19A0258. Mercier and Brown, JJ., concur.*