## A95A0412. COLUMBUS ANESTHESIA GROUP, P. C.
## v. KUTZNER.
### (459 SE2d 422)

BEASLEY, Chief Judge.

Kenneth Barngrover, M. D., Columbus Anesthesia Group, P. C. (CAG) and Dr. Robert Kutzner agreed that Dr. Kutzner would become an equal member in CAG upon his obtaining a Georgia medical license and privileges at Doctors Hospital. The terms and conditions of Kutzner's membership in the professional corporation are set out in an "Anesthesiology Agreement" executed on May 14, 1993. The contract specifies Kutzner's benefits as an equal member (25 percent interest); states the parties' intent that Barngrover and Kutzner will form a separate Georgia corporation to be called Southeast Regional Pain Center (SERP); establishes the parameters of Kutzner's medical

practice as an anesthesiologist with certain hours on call at Doctors Hospital; and allocates the physicians' respective interests and responsibilities when SERP is fully operational.

The agreement further provides that an aggrieved party may terminate the relationship for reasonable cause including breach of any provision, calls for a 15-day "cure" period and "independent verification" of alleged breaches, and states that upon written request, a "further dispute" shall be submitted to binding arbitration according to the rules of the American Arbitration Association (AAA). On April 8, 1994, Dr. Kutzner filed a demand for arbitration. The trial court denied CAG's motion to stay arbitration proceedings (OCGA §§ 9-9-2 (c) (9) and 9-9-6 (b) (1)), apparently concluding that the Federal Arbitration Act (9 USC § 2) preempts application of the Georgia Arbitration Code.

CAG contends the trial court erred in that the non-initialed arbitration provision in Kutzner's employment contract is unenforceable under the Georgia Arbitration Code (OCGA § 9-9-1 et seq.). Kutzner, on the other hand, maintains (a) the Federal Arbitration Act applies to preempt the more restrictive provisions of the Georgia Arbitration Code, because performance of the agreement involved interstate commerce as contemplated under the federal act; and (b) the agreement is not an employment contract.

1. We must initially determine whether the federal act preempts the application of state law here. Under the federal act, "[a] written provision in any . . . contract evidencing a *transaction involving commerce* to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Emphasis supplied.) 9 USC § 2. The Supreme Court recently noted that the federal act "seeks broadly to overcome judicial hostility to arbitration agreements and applies in both state and federal courts[.]" *Allied-Bruce Terminix &c. v. Dobson*, 513 U. S. ____ (115 SC 834, 130 LE2d 753) (1995). If the agreement involves interstate commerce, the federal law applies to enforce its arbitration provision. *Southland Corp. v. Keating*, 465 U. S. 1 (104 SC 852, 79 LE2d 1) (1984); *West Point-Pepperell v. Multi-Line Indus.*, 231 Ga. 329 (201 SE2d 452) (1973).

The agreement brings Dr. Kutzner into CAG as an equal member, establishes the parameters of his practice as an anesthesiologist at Doctors Hospital, and states the parties' intent to form a second, separate Georgia corporation to operate a regional pain center in Columbus. In support of his position that the federal act applies, Dr. Kutzner relies upon decisions involving construction contracts such as *ADC Constr. Co. v. McDaniel Grading*, 177 Ga. App. 223 (1) (338

SE2d 733) (1985). It held that interstate commerce was involved in a contract to construct an apartment complex because the general contractor used subcontractors and employees from other states and incorporated construction materials purchased outside the state. Dr. Kutzner argues that his agreement similarly involves interstate commerce because CAG recruited him to move from Indiana to Georgia, and under the agreement he was to contribute computers, software and medical equipment manufactured outside Georgia to the new corporate regional pain center. Dr. Kutzner also points to the Supreme Court's recent decision that the phrase "involving commerce" in the context of the federal act is "the functional equivalent of the phrase 'affecting commerce,' which normally signals Congress' intent to exercise its commerce power to the full[.] [Cit.]" *Allied-Bruce Terminix &c. v. Dobson*, supra. The Court held the federal act applies to enforce arbitration provisions in agreements evidencing transactions affecting commerce even if the parties did not contemplate an interstate commerce connection.

Nevertheless, we are not persuaded that the federal act applies. The contract establishes the terms of Dr. Kutzner's membership in a Georgia professional corporation providing medical services in Georgia. Performance of the parties' agreement to form a second professional corporation, unlike execution of a construction contract using out-of-state labor and materials, does not involve equipment manufactured outside Georgia. Instead, Dr. Kutzner merely agreed to transfer ownership of such equipment to the new corporate entity. Contribution of equipment to a professional corporation after its formation does not affect interstate commerce within the meaning of the federal act. See *Rhodes v. Inland-Rome*, 195 Ga. App. 39 (392 SE2d 270) (1990) (Timber cutting contract between Georgia parties to be performed solely within Georgia does not relate to the subsequent sale of the timber out of state.) That Dr. Kutzner resided in Indiana when he negotiated the terms of the agreement and moved to Georgia for its performance is similarly insufficient to involve interstate commerce. See *Bernhardt v. Polygraphic Co. of America*, 350 U. S. 198, 200-201 (76 SC 273, 100 LE 199) (1956); accord *Allied Bruce Terminix &c. v. Dobson*, supra; compare *DiMambro-Northend Assoc. v. Blanck-Alvarez, Inc.*, 251 Ga. 704 (309 SE2d 364) (1983).

2. Under OCGA § 9-9-2 (c) (9), the Georgia Arbitration Code does not apply to "[a]ny contract relating to terms and conditions of employment unless the clause agreeing to arbitrate is initialed by all signatories at the time of the execution of the agreement." The Agreement sets forth the terms of Dr. Kutzner's membership in CAG (25 percent interest) and the contemplated SERP (51 percent interest); his base salary, bonuses and benefits; and the hours to be devoted to CAG duties during the development of Dr. Kutzner's SERP practice

and when that practice became full-time. Thus, while it establishes his ownership interests in the professional corporations, the agreement relates to the terms and conditions of Dr. Kutzner's employment by CAG, which renders the arbitration provision unenforceable under the Georgia Arbitration Code.

Thus, the trial court erred in denying CAG's petition for a stay of arbitration.

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED MAY 15, 1995 —
RECONSIDERATION DENIED JULY 20, 1995 — 

*James D. Patrick, Jr.,* for appellant.
*Vaughan & Murphy, Charles C. Murphy, Jr.,* for appellee.