**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**August 5, 2021**

# In the Court of Appeals of Georgia

A21A0866. VASUDEVA v. DAGNEW et al.

MERCIER, Judge.

In this employment agreement dispute, Viren Vasudeva appeals from a trial court order dismissing his civil action against Elias Dagnew and Georgia Brain & Spine Center, P.C., ("GBC") and compelling arbitration. Because the arbitration clause in the employment agreement is unenforceable, we reverse.

The record reveals that in June 2018, Vasudeva, a physician, entered into an employment agreement to provide neurosurgery and spine surgery services to patients at GBC. Dagnew, the owner and president of GBC, signed the agreement on behalf of GBC.

In August 2019, Vasudeva notified Dagnew that GBC was in breach of the employment agreement. In the notice, Vasudeva asserted, among other things, that

he had not received his full salary, had often been paid several weeks late, and had not been provided adequate office space, equipment, and support staff. In late September 2019, Vasudeva received a letter from Dagnew that GBC was terminating the employment agreement "without cause" effective December 27, 2019. However, in October, Vasudeva sent a notice to Dagnew that he was terminating the agreement for "Good Cause." Vasudeva demanded all amounts owed to him under the employment agreement and an audit of records related to his compensation and expenses.

In March 2020, Vasudeva filed a complaint naming as defendants GBC, Dagnew, and a third party later dismissed from the action. His complaint set forth multiple causes of action, including claims for fraud, negligent misrepresentation, indemnification, fraudulent transfer, and breach of the employment agreement. Vasudeva requested attorney fees, and he sought more than $1 million in damages and $2 million in punitive damages. He subsequently moved for partial summary judgment on some counts of the complaint and requested an accounting.

The defendants answered the complaint and filed a motion to dismiss Vasudeva's action and compel arbitration. They asserted that pursuant to Section 9.19

of the employment agreement ("Dispute Resolution; Waiver of Jury Trial"),[1]

---

[1] This clause provides:

Practice and Physician agree that any controversy or claim arising from or relating to this Agreement, or the breach hereof, shall be settled by mandatory binding arbitration in accordance with the rules and procedures of alternative dispute resolution and arbitration established by the Alternative Dispute Resolution Service of the American Health Lawyers Association ("AHLA") or, upon agreement of the Parties . . . by the Commercial Arbitration Rules of the American Arbitration Association ("AAA"); provided, however, that as a pre-requisite to requesting arbitration, the Parties agree to endeavor first to settle the dispute by mediation administered by JAMS Mediation and Arbitration Services based in Atlanta, with the cost of the mediator to be shared equally by the Parties. If the dispute proceeds to arbitration, such arbitration shall be conducted before a single arbitrator selected jointly by the Parties, or in the event the Parties are unable to agree, designated by the AHLA or AAA. The award of the arbitrator shall be final and binding upon the Parties. The party requesting the arbitration must do so within twelve (12) months from the action which is the basis for the arbitration request. The arbitration shall take place in Atlanta, Georgia. Mediation shall not extend or toll the deadline to arbitration [sic] be entitled to award punitive, consequential, exemplary, or similar damages. The costs of such arbitration (excluding the attorneys' fees and costs of each of the Parties) shall be shared equally by the Parties. The award of the arbitrator may be enforced by any court having proper jurisdiction thereof, and in any proceeding to confirm, vacate or modify

Vasudeva was required to arbitrate his dispute. Vasudeva responded that the arbitration clause in the employment agreement is unenforceable because it was not initialed by the signatories as required by OCGA § 9-9-2 (c) (9) of the Georgia Arbitration Code. Vasudeva also asserted that his termination of the employment agreement nullified the arbitration clause.

Following a hearing on the parties' motions, the trial court granted the defendants' motion to dismiss Vasudeva's complaint and compel arbitration.[2] With regard to the requirement in OCGA § 9-9-2 (c) (9) that the arbitration clause be initialed, the court found:

an arbitral award, the prevailing Party shall be entitled to recover from the other Party costs and expenses, including reasonable attorneys' fees. To the extent permitted by law, the Parties hereby jointly and severally waive any and all right to trial by jury in any action or proceeding arising out of or relating to this Agreement, or the obligations hereunder. The Parties each represent to the other that this Waiver is knowingly, willingly and voluntarily given.

[2] The court denied as moot other pending motions, including Vasudeva's motion for partial summary judgment.

4

> The Arbitration Provision begins at the bottom of Page 21 [of the employment agreement] and continues onto Page 22. Each page is separately initialed. The initials on Page 21 are immediately adjacent to the Arbitration Provision. The only substantive language on Page 22 is the remaining portion of the Arbitration Provision. The Court finds these initials sufficient to meet the requirements of OCGA § 9-9-2 (c) (9).

The court found further that termination of the agreement by either Vasudeva or GBC did not invalidate the arbitration provision.

On appeal, Vasudeva argues that the trial court erred in finding that the arbitration clause complied with OCGA § 9-9-2 (c) (9), that he and Dagnew (on behalf of GBC) separately initialed the arbitration clause, and that Vasudeva's termination of the employment agreement did not nullify application of the arbitration clause. Vasudeva also asserts that the trial court erred in dismissing his claims against Dagnew because Dagnew was not a signatory (signing only on behalf of GBC) and therefore not subject to the arbitration clause.

1. We first consider whether the arbitration clause satisfied the requirements of OCGA § 9-9-2 (c) (9).[3]

---

[3] The parties do not dispute that the Georgia Arbitration Code applies here. See OCGA § 9-9-1 et seq. The "Governing Law" provision in the agreement provides that the agreement shall be construed in accordance with Georgia law, and the arbitration

5

Whether a valid and enforceable arbitration agreement exists is a question of law. On appeal from the grant or denial of a motion to compel arbitration, the standard of review is whether the trial court was correct as a matter of law. The construction of an arbitration agreement, like any other contract, presents a question of law, which is subject to de novo review. And the validity of an arbitration agreement is generally governed by state law principles of contract formation. As the [parties] seeking arbitration, [the defendants] bear the burden of proving the existence of a valid and enforceable agreement to arbitrate.

*West v. Bowser*, ___ Ga. App. ___, slip op. at 4-5 (1) (Case No. A21A0055; decided June 25, 2021) (citations and punctuation omitted).

The Georgia Arbitration Code applies

to all disputes in which the parties thereto have agreed in writing to arbitrate and shall provide the exclusive means by which agreements to

---

clause does not reference the Federal Arbitration Act (FAA). Compare *Primerica Financial Svcs. v. Wise*, 217 Ga. App. 36, 36-37 (1) (456 SE2d 631) (1995) (arbitration clause made two references to the FAA). The agreement governs Vasudeva's employment at GBS as a physician and does not involve interstate commerce. See, e.g., *Columbus Anethesia Group v. Kutzner*, 218 Ga. App. 51, 52-53 (1) (459 SE2d 422) (1995) (federal act did not apply to contract establishing terms of physician's membership in Georgia corporation providing medical services in Georgia; "If the agreement involves interstate commerce, the federal law applies to enforce its arbitration provision."); see also *BDO USA v. Coe*, 329 Ga. App. 79, 80 (1) (763 SE2d 742) (2014) (FAA applies to contracts containing an arbitration clause that involves or affects interstate commerce).

arbitrate disputes can be enforced, except the following, to which this part shall not apply . . .

Any contract relating to terms and conditions of employment *unless the clause agreeing to arbitrate is initialed by all signatories* at the time of the execution of the agreement.

OCGA § 9-9-2 (c) (9) (emphasis supplied). See also *ISS Intl. Svc. Systems v. Widmer*, 264 Ga. App. 55, 61 (3) (589 SE2d 820) (2003) ("Under OCGA § 9-9-2 (c) (9), an arbitration clause in an employment contract is unenforceable unless the clause is initialed by all signatories at the time of the execution of the agreement.") (citation and punctuation omitted). As this Court explained in *Pinnacle Constr. Co. v. Osborne*, 218 Ga. App. 366, 368 (3) (460 SE2d 880) (1995), with regard to OCGA § 9-9-2 (c) (8) (arbitration clause in agreements to purchase real estate must be initialed by all signatories), "the purpose of the requirement is to ensure that [signatories] are not compelled to give up their common law right of access to the courts unless they specifically acknowledge the intent to do so by initialing the arbitration clause."

The employment agreement was signed by Vasudeva and Dagnew (on behalf of GBC). At the bottom left of each page of the 26-page agreement, in the footer

7

margin, is a blank line under which the words "Physician's Initials" are typed. Vasudeva initialed each page on the blank line, and Dagnew initialed next to "Physician's Initials." The arbitration clause begins at the bottom of page 21 of the agreement and continues at the top of page 22 with six lines of text, followed by "[SIGNATURES ON FOLLOWING PAGE]." The remainder of page 22 is blank, and just as with all other pages of the agreement, Vasudeva and Dagnew's initials appear at the bottom left of the page.

The trial court concluded that the initials at the bottom of pages 21 and 22 were sufficient to meet the requirements of OCGA § 9-9-2 (c) (9), because they were just below the clause on page 21, and the only substantive text on page 22 was the remainder of the clause. We disagree. "[T]he Georgia Arbitration Code is in derogation of the common law and must be strictly construed." *Progressive Data Systems v. Jefferson Randolph Corp.*, 275 Ga. 420, 420 (568 SE2d 474) (2002). Subsection (c) (9) specifically requires that the arbitration clause be initialed, not the bottom of the pages on which the clause appears. And "[u]nder Georgia law, the cardinal rule of contract construction is to ascertain the intent of the parties, as evidenced by the language of the contract." *Miller v. GGNSC Atlanta*, 323 Ga. App. 114, 118 (2) (746 SE2d 680) (2013). Here, the initials are at the bottom left of *every*

8

page of the agreement, including the addendum and exhibit pages following the signature page, indicating an acknowledgment of each page generally, not the arbitration clause specifically.[4]

Strictly construing OCGA § 9-9-2 (c) (9), as we must, we conclude that the arbitration clause was not initialed and therefore cannot be enforced. See, e.g., *Columbus Anesthesia Group v. Kutzner*, 218 Ga. App. 51, 53-54 (2) (459 SE2d 422) (1995) (non-initialed arbitration provision in employment contract unenforceable under the Georgia Arbitration Code); *Laird v. Risbergs*, 266 Ga. App. 107, 108 (596 SE2d 412) (2004) (arbitration provision in sales contract could not be enforced where signatories did not initial provision as required by OCGA § 9-9-2 (c) (8)). Thus, the trial court erred in dismissing Vasudeva's complaint and compelling arbitration.

2. In light of our holding in Division 1, we need not address Vasudeva's remaining claims of error.

*Judgment reversed. Rickman, C. J. and Dillard, P. J., concur.*

---

[4] The trial court found that the only substantive language appearing on page 22 is the remainder of the arbitration clause, suggesting that the initials at the bottom of the page acknowledge the remaining six lines of the arbitration agreement at the top of the page. But other text ("[SIGNATURES ON FOLLOWING PAGE]"), substantive or not, appears between the rest of the clause and the initials at the bottom, further supporting our conclusion here that those initials do not acknowledge the arbitration clause, but rather acknowledge that particular page of the agreement.